244 F.Supp. 84 (1965)
John WOODY et al., Plaintiffs,
v.
STERLING ALUMINUM PRODUCTS INCORPORATED, a Missouri Corporation, et al., Defendants.
No. 63 C 345.
United States District Court E. D. Missouri, E. D.
January 21, 1965.
*85 *86 *87 Jerome J. Duff, St. Louis, Mo., for plaintiffs.
Bartlett, Muldoon, Stix & Bartlett, Bartley & Siegel, Anderson, Gilbert, Wolfort, Allen, St. Louis, Mo., for defendants.
REGAN, District Judge.
The one hundred and ninety-three plaintiffs have brought their action in four counts. The named defendants are the plaintiffs' former employer, Sterling Aluminum Products Co., hereafter Defendant Sterling; International Association of Machinists, hereafter Defendant International; District Number 9, International Association of Machinists, hereafter Defendant District 9; Local Lodge 41 of the International Association of Machinists, hereafter Defendant Local; Larry Connors, individually, directing business representative of Defendant District 9, representing Defendants International, District 9 and Local; Russell Davis, individually, business representative of Defendant District 9, representing all three defendant labor organizations.
A plethora of motions have been directed to all counts.
We treat in this part the motions to dismiss of all defendants addressed to Count I and the motions to dismiss Count II of the three defendant labor organizations and the two individual defendants.
Paragraph 1 of Count I, which is realleged in every other count, asserts jurisdiction under the laws of the United States, the Fifth and Fourteenth Amendments to the Constitution and more particularly under Title 29 U.S.C. §§ 157, 158, 159, 185, 501; § 301, L.M.R.A. 1947; § 501, L.M.R.D.A.1959. Plaintiffs allege that the three defendant labor organizations were their duly recognized and exclusive bargaining agents and as such engaged in labor negotiations for a collective bargaining agreement with Defendant Sterling by and through their agents and business representatives, Defendants Connors and Davis. Count I then sets out the duties owed by the various defendants to plaintiffs during the collective bargaining negotiations. The defendant labor organizations and the individual defendants are alleged to owe plaintiffs the duties of fair and just representation without collusion with defendant Sterling, to act in concert with defendant Sterling against the interest, welfare and instructions of plaintiffs. Defendant Sterling is alleged to be under a duty to plaintiffs "to not dominate or interfere with the administration and duties of the aforesaid Defendant labor organizations;" and "to not refuse to bargain collectively with the aforesaid representatives of it's (sic) employees;" and to not collude with defendant labor organizations and the individual defendants in the performance of the latter five defendants' duties to plaintiffs. It is then alleged that defendants breached these duties by: conspiring and colluding to omit from the collective bargaining agreement certain provisions demanded by and favorable to plaintiffs and to include certain provisions detrimental to plaintiffs and against their instructions; by conspiring to defraud plaintiffs of employment by misrepresenting the scope and terms of the collective bargaining agreement; by conspiring to permit defendant Sterling to cease operation of its St. Charles plant without paying severance and vacation pay to plaintiffs; by conspiring to deprive plaintiffs of representation at the bargaining table and to leave them without representation, remedy or help through their representatives when plaintiffs learned that defendant Sterling intended to close its St. Charles plant. Plaintiffs allege that as a direct and proximate result thereof, plaintiffs suffered loss of employment and wages for a minimum period of two years in the collective amount of $3,120,000 and loss of representation and organization in the St. Charles plant in the amount of $1,000,000; plaintiffs also seek punitive damages for willful breach of the National Labor laws in the amount of $12,360,000.
Count II of the complaint asserted against only the three defendant labor *88 organizations and the two individual defendant business representatives, involves the same subject matter of Count I. It alleges that defendants failed and refused to bargain for a run-away clause, failed to disclose that they had agreed to a clause limiting recognition of the defendant labor organizations for the St. Charles plant of Defendant Sterling and to a clause permitting Defendant Sterling to close the St. Charles plant, and executed the collective bargaining agreement, all against the instructions of Plaintiffs. Further averments are that defendants misrepresented the contract proposals; misrepresented Defendant Sterling's intention to permanently close the St. Charles plant; failed and refused to follow plaintiffs' instructions given when the terms of the collective bargaining agreement became known to plaintiffs to re-open negotiations or to give notice to Defendant Sterling to cancel the agreement; failed to bargain collectively concerning plaintiffs' employment by refusing to represent and up hold plaintiffs' position on contract proposals with and on grievances against Defendant Sterling. Plaintiffs seek money damages in the total amount of $1,375,000 for loss of their employment bargaining position and strength with their employer, loss of their union dues for which they received no benefit or consideration, loss of wages by Defendants' refusal to process grievances, unjust enrichment of Defendant Sterling to plaintiffs' detriment, loss of seniority rights, pension rights and privileges, welfare rights and privileges and punitive damages of $1,000,000 for willful violation of the Labor Laws of the United States.
The similarity of the two counts permits their consideration together in relation to the jurisdictional questions raised on the motions to dismiss.
Neither count in substance alleges a breach of a collective bargaining agreement between a labor organization and an employer or between labor organizations in an industry affecting commerce. Hence jurisdiction cannot be predicated on 29 U.S.C.A. § 185. Matters concerning an employee benefit and welfare plan are not contained in either count. Hence jurisdiction cannot rest on 29 U.S.C.A. § 301. Both counts fairly may be construed to allege interference with activities protected by 29 U.S.C.A. § 157 and conduct prohibited by 29 U.S. C.A. § 158. However, jurisdiction over these matters is committed in the first instance to the National Labor Relations Board and not to this Court. San Diego Building Trades Council et al. v. Garmon et al., 359 U.S. 236, 79 S.Ct. 773, 3 L. Ed.2d 775; Local 100, United Association of Journeymen & Apprentices v. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638; Local No. 207, etc. v. Perko, 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646; Barunica v. United Hatters, etc., Local Number 55, 8 Cir., 321 F.2d 764 (1963); Portland Web Pressmen's Union v. Oregonian Pub. Co., 9 Cir., 286 F.2d 4; Adams v. International Broter. of Boilermakers, etc., 10 Cir., 262 F.2d 835; Giba v. International Union of Electrical, R. & M. Wkrs., D.C., 205 F. Supp. 553 (1962). A right of action for one injured by reason of a specific unfair labor practice is granted under 29 U.S.C. § 187 but the allegations of this complaint do not come within those provisions. Insofar as plaintiffs allege a federal question basing their action on a federal right granted under 29 U.S.C.A. § 159, they have not alleged facts bringing them within the one class of cases, beginning with and typified by Syres v. Oil Workers International Union, Local No. 23, et al., 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785, which recognizes the federal right when hostile discrimination is alleged. No discrimination is asserted here, hostile or otherwise.
Jurisdiction is also alleged under 29 U.S.C. § 501(b). That section provides for an action by a member of a labor organization against any officer, agent, shop steward or representative of any labor organization alleged to have violated the fiduciary duty imposed by 29 U.S.C. § 501(a). While that statute is not limited to pecuniary responsibilities of officers and representatives of labor *89 organizations, Johnson v. Nelson, 8 Cir., 325 F.2d 646 (1963), nonetheless proceedings in this court are conditioned on the refusal or failure of the labor organization to seek damages or an accounting and are to be brought for the benefit of the labor organization. 29 U.S.C.A. § 501(b) further provides that "No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte." Plaintiffs have not complied with these provisions. Addison v. Grand Lodge of International Association of Machinists, 9 Cir., 318 F.2d 504 (1963). Further, the statute expressly provides for an action against officers, agents, shop stewards or other representatives of labor organizations. It does not furnish a jurisdictional ground for actions against labor organizations and employers.
Most recently plaintiffs, by leave, have amended their complaint to state further statutory jurisdictional grounds under 29 U.S.C.A. §§ 402, 411, 412, 414, 415 but the speculation required to find that the factual averments may contain a fragment of an allegation that the specific rights there secured have been violated is too great to permit consideration of these alleged grounds of jurisdiction. Further, it appears that the provisions of 29 U.S.C.A. § 401 et seq. apply only to inner union rights. See Rinker v. Local Union No. 24 of Amal. Lithographers, D.C., 201 F.Supp. 204 (1962), dismissed as then nonappealable 313 F.2d 956. See also Tomko v. Hilbert, 3 Cir., 288 F.2d 625 (1961), Horn v. Amalgamated Ass'n of Street, Elec. Ry. & M. C. Emp., D.C., 194 F.Supp. 560 (1961).
Plaintiffs have also alleged jurisdiction under the Fifth and Fourteenth Amendments to the Constitution of the United States. This naked allegation is unsupported in the body of the complaint and thus appears to be entirely frivolous.
Defendants' motion to dismiss Counts I and II will be sustained in part, for lack of jurisdiction and in part for failure to state a claim on which relief can be granted.
Both plaintiffs and Defendant Sterling have moved for summary judgment on Count III of the complaint which is asserted solely against Defendant Sterling for breach of a contract covering the terms of plaintiffs' labor and employment from March 1, 1961, through February 28, 1963. The breach alleged is the refusal of Defendant Sterling to pay seniority termination allowance, which, under circumstances, is provided for in the collective bargaining agreement alleged to have been entered into between Defendant Sterling, Defendant Labor organizations and the individual defendant business representatives.
Plaintiffs seek summary judgment on all of paragraphs 2, 3 and 4 of Count III but only on paragraph 1 of Count III insofar as it incorporates paragraphs 1, 2 and 3 of Count I. The effect of this limitation is to withdraw from the Court's consideration the allegation in paragraph 1 of Count III that during the period concerned Defendant International, Defendant District 9, Defendant Local "were the duly recognized and exclusive bargaining agents for Plaintiffs and, as such, engaged in labor negotiations for a collective bargaining agreement with Defendant Sterling by and through their agents and business representatives, Defendants Connors and Davis." Thus the plaintiffs seek judgment on their claim based on the collective bargaining agreement but withdraw from decision their allegation that the collective bargaining agreement was negotiated on their behalf by their recognized and exclusive bargaining agents. The absence of such a factual allegation presents jurisdictional and other legal issues that cannot be determined on the basis of the complaint and the affidavits. Hence plaintiffs' motion for summary judgment will be overruled.
Defendant Sterling's motion for summary judgment is addressed to all of Count III of the complaint. In support thereof, Defendant Sterling has submitted affidavits and the collective bargaining agreement alleged to have been breached. This motion admits, though, *90 that all defendant unions represented plaintiffs and were parties to the collective bargaining agreement. It is unnecessary to the decision herein to determine whether all defendant labor organizations represented plaintiffs and were parties to the collective bargaining agreement. It is sufficient here to observe that the collective bargaining agreement on its face shows that it was entered into between Defendant Sterling and Defendant District 9 and Automotive, Petroleum and Allied Industries Employees' Union, Local 618, the latter labor organization having no connection with the current controversy so far as the complaint indicates. Plaintiffs allege and we take as established that at least Defendant District 9 represented plaintiffs in labor negotiations with Defendant Sterling for a collective bargaining agreement in an industry affecting commerce and that agreement was the result of such labor negotiations.
We begin with some observations of what we perceive the current status of federal substantive law under 29 U.S. C.A. § 185 as it pertains to the problems at hand.
Jurisdiction is present under 29 U.S.C.A. § 185(a), such section not being limited to suits between employers and labor organizations. Smith v. Evening News Assn., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., Inc., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918. It is noteworthy that in Smith v. Evening News Assn., supra, 371 U.S. 195, 83 S.Ct. 267 FN 1, no arbitration machinery was provided in the collective bargaining agreement. The policy of federal labor law "* * * can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403. The question of an individual employee's standing to maintain an action for breach of a collective bargaining agreement was not resolved by Smith v. Evening News Assn., supra, but that decision indicates that the question may properly be determined from the contract itself in the light of federal law.
The contract before us in Article III provides for settlement of grievances through arbitration. Section 3 thereof provides machinery for settling disputes arising between "the Company and its employees either individually or collectively as to the meaning and application of the provisions of this agreement" or "about matters not specifically mentioned in this agreement" or "trouble of any kind". The procedure is then set out in four steps culminating in the appointment of an arbitrator whose "decisions * * * shall be final and binding on all parties." Section 4 provides: "The parties agree that as a part of the consideration of this contract any and all disputes and any and all claims, demands or action growing therefrom or involved therein shall be by the contracting parties settled and determined exclusively by the machinery provided in the preceding Section." As here pertinent the contracting parties are District 9 and Defendant Sterling. Absent Defendant Sterling's motion for summary judgment, it would appear to this court that as against Defendant Sterling, these individual employees would have no standing under this contract, to maintain this action for damages for the alleged breach of the seniority termination allowance provision because the contracting parties promised that such disputes would be settled by them by means of the machinery provided by terms of the contract. Defendant Sterling promised that it would consider virtually any claim of or dispute with employees, individually or collectively; that eventually if the Union (and we take it as here meant the representatives of plaintiff) and the company could not resolve the difficulty, that resolution would be made by an arbitrator. In fact, the grievance machinery was made the exclusive means of settling disputes. Arbitration is a matter of contract to which a party cannot be required *91 to submit any dispute which he has not so agreed to submit, United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 and the Court's function in an action to compel arbitration is limited to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract, United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, so it would appear that arbitration being a keystone of federal labor law, the contracting parties, having chosen another forum for settlement of disputes conditioned on the failure of such settlement between the contracting parties, this Court's function, in this action for money damages for breach of a collective bargaining contract, would be first to determine whether the contract contained an arbitration clause covering the claimed breach and if such was the case, as here, dismiss the complaint absent some factual allegation therein which legally would relieve the obligation to arbitrate. We deem this of considerable importance but since neither plaintiffs nor Defendant Sterling raise the issue and since Defendant Sterling has submitted a motion for summary judgment on the merits, we shall proceed by treating defendant's motion for summary judgment as a waiver of the arbitration clause of the contract although we have doubt as to the propriety of doing so in the light of the emphasis in Federal labor law on the desirability of maintaining the arbitration process agreed to by the parties.
We thus turn to the issue as presented by the parties and find the material facts are not in dispute.
The 1961-1963 contract was negotiated in settlement of a five month strike at the St. Charles plant. One of the major issues of that strike was whether defendant would agree to any severance pay. A frequent topic in negotiations was the possibility that the company might move its production out of St. Louis.
The contract provides in Article IV (j):
"The Union recognizes the right of the Company in its sole discretion at any time during the term of this agreement, to close down permanently its plant at St. Charles or to discontinue permanently a department of the plant or a substantial portion thereof and terminate the employment of individuals. The employee whose employment is terminated either directly or indirectly as a result thereof because he was not entitled to other employment with the Company under the provisions of Article IV, Seniority, shall be entitled to a seniority termination allowance providing such termination for reasons set forth above occurred after March 1, 1961. Such allowances shall be in accordance with the following schedule:
3 to 5 years with the Company, 2 weeks' pay;
5 to 7 years with the Company, 3 weeks' pay;
7 to 10 years with the Company, 4 weeks' pay;
10 years or more with the Company, 5 weeks' pay;
computed at his base rate of pay.
Temporary layoff for reasons other than those stated in the first paragraph of paragraph (j) during such two-year period shall not constitute termination entitling the employee laid off to such seniority termination pay as set forth above.
It is expressly understood at the expiration of this two-year contract the Company shall have the right to close down permanently the St. Charles plant, to relocate permanently any department thereof or discontinue permanently any such department, without seniority termination pay.
It is further understood that an employee's seniority shall not be considered terminated upon receipt of *92 seniority termination allowance, but shall terminate in accordance with Article IV, Section 1(d)."
Under letter of December 26, 1962, Defendant Sterling notified Defendant District 9 that it would permanently cease all manufacturing in its plant at St. Charles at the close of business, February 28, 1963 when the labor agreement would be terminated. By letter of that same date, defendant District 9 informed Defendant Sterling, in accordance with Article XVI of the agreement, of its desire to terminate the agreement and that it would submit proposed amendments at a later date. In response to the proposed amendments subsequently received, Defendant Sterling reiterated that it would permanently close the St. Charles plant at the close of business, February 28, that checks for the last week's work and vacation pay due each worker as of the close of business February 28, 1963, would be distributed as soon as amounts could be computed; that since it would not employ any production workers at St. Charles thereafter and since Defendant District 9 did not represent employees at any other plant, no negotiation of any new contracts would be undertaken although it was ready to discuss matters within the scope of the current contract which will terminate February 28, 1963.
The following notice was posted in defendant Sterling's plant and handed to each employee as he left the plant on February 27:
"IMPORTANT NOTICE"
"You have been notified through your Union that the St. Charles Plant of Sterling Aluminum Products Inc. will be closed permanently at the end of the day, February 28, 1963, and you will be terminated as an employee at that time."
"The accompanying check covers your pay through February 24, 1963."
"We are computing your pay for February 25 to February 28, 1963, both days inclusive, although you are not to return to work on February 28."
"A check for such pay to your date of termination, plus your vacation pay will be mailed as soon as the amounts due can be computed, which will be not later than March 5, 1963."
Plaintiffs received payment for their employment through February 28, 1963, but performed no productive work processes for Defendant Sterling on that date and were denied access to the St. Charles plant. In order to stockpile against orders and anticipated orders during the period between shutdown of production at St. Charles subsequent to February 28, 1963, and until production commenced at its new plant at Malden, Missouri, Defendant programmed a very full production at the St. Charles plant up to March 1, 1963. Toward the end of February, 1963, Defendant Sterling apprehensive that serious damage to company property might occur on the last working day, determined that without any advance notice, employees would be denied access to the plant on the last working day, February 28, 1963, although they would be paid for a full day's work.
It is plaintiffs' contention that no production work processes having been performed by plaintiffs after midnight February 27, 1963, the total and permanent shutdown of the plant occurred on February 27, 1963, during the term of the contract and this event under the contract entitled them to the seniority termination allowance provided by Article IV(j). On the other hand, Defendant Sterling contends that unless termination of employment occurred during the term of the agreement, employees would not be entitled to seniority allowance payments and that here the facts show that the plaintiffs' employment was not terminated until midnight, February 28, 1963. As we construe Article IV(j), whatever other rights and conditions there contained, Defendant Sterling's obligation to pay seniority termination allowance would not occur by its exercise *93 during the term of the agreement of its right to close down permanently the St. Charles plant but rather upon the termination of the employment of an employee during the term of the agreement as a direct or indirect result of the permanent closing of the St. Charles plant. Hence the issue crystallized is whether plaintiffs' employment was terminated during the term of the agreement. Under the facts, plaintiffs' employment was not terminated during the term of the agreement unless the notice that they were not to return to work on February 28, 1963, constituted termination of employment. We find that the notice did not constitute such termination. It reiterated that plaintiffs' employment would be terminated as of the close of business February 28, 1963. True plaintiffs were relieved of the obligation to perform work for that day's wages and were not permitted entrance to the plant but such does not constitute termination of employment where, as here, plaintiffs were paid through February 28, 1963.
We find that Defendant Sterling has not breached the contract in its refusal to pay seniority termination allowances to plaintiffs.
Defendant Sterling's motion for summary judgment will be sustained.
Plaintiffs' Count IV realleges all of the allegations contained in Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, and 9 of Count I of the First Amended Complaint. Plaintiffs amended their complaint by interlineation on December 14, 1964.
Jurisdiction is asserted under the Laws of the United States, the Fifth Amendment, the Fourteenth Amendment, Title 29 U.S.C. §§ 141 et seq., 157, 158, 159, 185, 301 et seq., 402, 411, 412, 414, 415, and 501.
It is difficult to ascertain from a review of the pleadings the defendants against whom liability is sought. Admittedly Count IV has been dismissed as to Defendants Sterling and Lincoln National Life Insurance Company of Fort Wayne, Indiana, however, is liability sought against Defendants International, District 9 and Local as well as Defendants Connors as managing trustee and operating trustee, Deutsch and Poelker. Apparently no liability is asserted against Defendant Davis in any capacity.
In any event Count IV attempts to allege that certain Defendants owed and breached their fiduciary duty to plaintiffs by failing to disclose what has become of monies paid into the District No: 9 I. A. of M. Pension Trust, created under a collective bargaining agreement, although repeated inquiry has been made; by failing and neglecting to advise the plaintiffs of their rights in said trust although repeated demands have been made for them to do so; by neglecting, refusing and failing to make available to Plaintiffs the books and records of said trustees. Plaintiffs seek an accounting or in the alternative damages.
Although there are numerous motions directed to Count IV we treat here Defendants, International, District 9, Local, Connors, in all capacities, Davis in all capacities, Deutsch and Poelker, motion to dismiss.
As stated before jurisdiction cannot be predicated under the Fifth and Fourteenth Amendments to the Constitution of the United States. This naked allegation is unsupported by the allegations contained in Count IV and thus appears to be entirely frivolous.
Of course, 29 U.S.C. § 141 et seq. sets forth the general provisions of the Labor Management Relations Act of 1947. Count IV in no way can be construed to allege interference with any of the activities protected by 29 U.S.C. § 157, conduct prohibited by 29 U.S.C. § 158 or privileges granted by 29 U.S.C. § 159.
Section 185 does not provide for suits of the nature as alleged in Count IV but provides for suits for violation of contracts between an employer and one or more labor organizations.
Jurisdiction is sought under 29 U.S.C. § 301 et seq. requiring the disclosure of welfare and pension plans. Although § 308 provides the remedy for violating these sections, the liability of any administrator as defined therein is *94 predicated on the refusal of the administrator after written request to make publication to them within 30 days of such request in accordance with § 307 of a description of the plan or an annual report containing the information required by § 306 & § 305. On the face of the pleadings Count IV does not allege sufficient allegations to come within the purview of § 308.
Once again jurisdiction of the claim set forth in Count IV cannot be predicated on Sections 402, 411, 412, 414 or 415 of Title 29. There is no allegation whatsoever in this Count that any of the rights set forth in these sections have been violated.
Lastly, jurisdiction of Count IV is sought under § 501 of Title 29 regarding the fiduciary responsibility of officers of labor organizations. Section 501 provides that proceedings under this section are conditioned on the refusal or failure of the labor organization to seek damages or an accounting and are to be brought for the benefit of the labor organization. There is no allegation whatsoever in Count IV that the labor organization or its governing board of officers refused or failed to sue or recover damages or secure an accounting after being requested to do so by any members so that this condition precedent has not been performed. Section 501(b) further provides that "No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte." Plaintiffs have not complied with this provision. The record does not reveal that any such application was ever made by the plaintiffs or granted by the Court. Addison v. Grand Lodge of Intern. Assn. of Machinists, supra.
In view of the foregoing defendants motion to dismiss Count IV is granted.
All of the numerous other motions filed in connection with this cause have not been considered as they are rendered moot by the rulings of this Court on the foregoing motions.
It is therefore ordered that this memorandum opinion constitute this Court's finding of facts and conclusions of law and that judgment be entered for the defendant Sterling on Count III and that Counts I, II, and IV of the Amended Complaint as amended by Interlineation be dismissed and the Clerk of this Court is directed to prepare judgment in accordance therewith.