Ronald Joe Hood, the plaintiff in an action pending in the Franklin Circuit Court, petitions for a writ of mandamus directing Judge John D. Jolly to vacate his order granting the motion of the defendant, Golden Poultry Company, Inc. ("Golden"), to stay judicial proceedings pending arbitration. We grant the petition.
In June 1994, Hood was hired by Golden as a truck driver to deliver chickens in various states. On June 15, 1994, soon after Hood had started work, Golden's personnel manager called Hood into his office and told him to sign certain documents relating to his employment. Among the documents Hood signed was a one-page agreement stipulating that "any controversy or claim arising out of or relating to the Agreement, or the breach thereof, or arising out of or relating to my employment or separation from employment . . . shall be resolved by arbitration."
On August 23, 1994, while working in the line and scope of his employment with Golden, Hood injured his left knee. He missed some time from work, and his attending physician assigned him a five percent permanent partial impairment from the injury. On March 24, 1995, Golden terminated Hood's employment. On June 23, 1995, Hood and Golden, acting pursuant to § 25-5-56, Ala. Code 1975, filed in the Franklin Circuit Court a joint petition for approval of a settlement of Hood's claim for workers' compensation benefits. On November 20, 1995, the parties filed a second joint petition for approval of a settlement of the claim, in order to foreclose Hood's claiming future medical benefits under the Workers' Compensation Act.
On November 20, 1996, Hood initiated this action in the Franklin Circuit Court, alleging that Golden had terminated his employment solely because he had sought workers' compensation benefits and that Golden had thereby violated § 25-5-11.1, Ala. Code 1975. On December 13, 1996, Golden removed the case to the United States District Court for the Northern District of Alabama. Thereafter, Hood moved to remand the case to the state court, arguing that the case was not properly removable, because of 28 U.S.C. § 1445(c), which provides that "a civil action in any State court arising under the workmen's compensation laws of any such State may not be removed to any district court of the United States." On January 22, 1997, while the case was pending in the federal court, an additional attorney for Golden filed a notice of appearance. On January 27, 1997, the parties' attorneys met, pursuant to Rule 26(f), Fed.R.Civ.P., to formulate a discovery plan to govern the litigation in the district court. At this meeting, Golden agreed to a scheduling plan for the district court to adopt. The agreement signed by *Page 343 
Golden's attorney stated: "The case should be ready for trial by October 1997 and at this time is expected to take approximately 3 days." Two months later, in a letter dated March 27, 1997, counsel for Golden first advised Hood's counsel that Golden intended to seek enforcement of the arbitration agreement instead of going to trial in the federal court. The following day, Golden filed its answer, pleading as an affirmative defense that the "plaintiff's cause of action against the defendant is barred by a valid and enforceable Arbitration Agreement executed by the plaintiff." On April 3, 1997, Golden moved the federal district court to stay the case pending arbitration, pursuant to the agreement signed by Hood. Before ruling on that motion, the federal court, on April 30, 1997, granted Hood's motion to remand the case to the Franklin Circuit Court, on the ground that the removal had been improper, because of 28 U.S.C. § 1445(c). On remand, the state circuit judge held a hearing on the motion to stay the case pending arbitration and later entered an order granting Golden's motion, holding that the arbitration agreement was enforceable and that Golden had not waived its right to have Hood's claim arbitrated. Hood petitions for a writ of mandamus directing the trial court to set aside its order staying the case pending arbitration.
A petition for the writ of mandamus is the appropriate means by which to challenge a trial court's order compelling arbitration. Ex parte Jones, 686 So.2d 1166 (Ala. 1996). Mandamus is an extraordinary remedy, and it requires a showing that there is: "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Prendergast, 678 So.2d 778, 779
(Ala. 1996) (citation omitted). We must review the trial court's decision for an abuse of discretion. Id.
Hood argues that the trial court abused its discretion by compelling arbitration, because, he argues 1) Golden waived its right to arbitrate and 2) the arbitration agreement is unenforceable for lack of mutuality of obligation and remedy.
Writing for the Court in Companion Life Ins. Co. v. WhitesellMfg., Inc., 670 So.2d 897 (Ala. 1995), Justice Houston discussed the issue of a party's waiver of a contractual right to arbitrate:
 "It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case."
670 So.2d at 899 (citations omitted).
Applying these principles to the facts in Companion Life, this Court held that the trial court had not abused its discretion in denying the motion of the defendant, Companion Life Insurance Company, to compel arbitration, because Companion had waived its right to arbitration. We agreed with the trial court that Companion's response to Whitesell's complaint, whereby Companion removed the case to a federal court; filed an answer contending that the plaintiff's claims were preempted by ERISA; filed a case-scheduling-meeting report pursuant to Rule 26(f), Fed.R.Civ.P.; and sought for the first time to enforce the arbitration agreement five months after the complaint was filed, "was inconsistent with any desire that [Companion] may have had to resolve the case by arbitration" and "certainly indicate[d] an intention on Companion's part, at least initially, to forfeit its right of arbitration in favor of a judicial resolution." 670 So.2d at 899. We further agreed that Whitesell would be substantially prejudiced if Companion were allowed to invoke the arbitration clause because Whitesell had incurred substantial *Page 344 
costs in time and money to have the case remanded to the state court, expenses that Whitesell would have been spared had Companion invoked the arbitration clause earlier. Id.
After reiterating that whether a party has waived the right to arbitration must be determined on a case-by-case basis, theCompanion Life Court quoted with approval Cabinetree ofWisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388,390-91 (7th Cir. 1995), in which the United States Court of Appeals for the Seventh Circuit discussed the significance of a party's removing a case to a federal court as a factor affecting the determination of whether that party has waived its right to enforce an arbitration agreement. That discussion is equally relevant here:
 " 'An arbitration clause gives either party the choice of an alternative, nonjudicial forum in which to seek a resolution of a dispute arising out of the contract. But the intention behind such clauses, and the reason for judicial enforcement of them, are not to allow or encourage the parties to proceed, either simultaneously or sequentially, in multiple forums. Cabinetree, which initiated this litigation, could, instead of filing suit in a Wisconsin state court, have demanded arbitration under the contract. It did not, thus signifying its election not to submit its dispute with Kraftmaid to arbitration. Kraftmaid if it wanted arbitration could have moved for a stay of Cabinetree's suit in the Wisconsin state court. It did not. Instead it removed the case to federal district court. By doing so without at the same time asking the district court for an order to arbitrate, it manifested an intention to resolve the dispute through the processes of the federal court. To resolve the dispute thus is not to resolve it through the processes of the American Arbitration Association.
 " 'We have said that invoking judicial process is presumptive waiver. For it is easy to imagine situations — they have arisen in previous cases — in which such invocation does not signify an intention to proceed in a court to the exclusion of arbitration. Miller v. Drexel Burnham Lambert, Inc., 791 F.2d 850, 854 (11th Cir. 1986) (per curiam); Dickinson v. Heinold Securities, Inc., 661 F.2d 638, 641-42 (7th Cir. 1981). There might be doubts about arbitrability, and fear that should the doubts be resolved adversely the statute of limitations might have run. Some issues might be arbitrable, and others not. The shape of the case might so alter as a result of unexpected developments during discovery or otherwise that it might become obvious that the party should be relieved from its waiver and arbitration allowed to proceed. We need not try to be exhaustive. It is enough to hold that while normally the decision to proceed in a judicial forum is a waiver of arbitration, a variety of circumstances may make the case abnormal, and then the district court should find no waiver or should permit a previous waiver to be rescinded. Envirex, Inc. v. K.H. Schussler Fur Umwelttechnik GmbH, 832 F. Supp. 1293, 1296 (E.D.Wis. 1993); see also Gilmore v. Shearson/American Express, Inc., 811 F.2d 108, 113
(2d Cir. 1987). In such a case prejudice to the other party, the party resisting arbitration, should weigh heavily in the decision whether to send the case to arbitration, as should the diligence or lack thereof of the party seeking arbitration — did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?
" '. . . .
 " '. . . [W]e think the judge was right to find a waiver. The presumption that an election to proceed judicially constitutes a waiver of the right to arbitrate has not been rebutted. There is no plausible interpretation of the reason for the delay except that Kraftmaid initially decided to litigate its dispute with Cabinetree in the federal district court, and that later, for reasons unknown and with no shadow of justification, Kraftmaid changed its mind and decided it would be better off in arbitration. Neither in its briefs nor at oral argument did Kraftmaid give any reason for its delay in filing the stay besides needing time 'to weigh its options.' That *Page 345 
is the worst possible reason for delay. It amounts to saying that Kraftmaid wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration. It wanted to play heads I win, tails you lose.
 " 'Selection of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution. This policy is reflected not only in the thirty-day deadline for removing a suit from state to federal court but also in the provision waiving objections to venue if not raised at the earliest opportunity. Fed.R.Civ.P. 12(h)(1). Parties know how important it is to settle on a forum at the earliest possible opportunity, and the failure of either of them to move promptly for arbitration is powerful evidence that they made their election — against arbitration. Except in extraordinary circumstances not here presented, they should be bound by their election.' "
Companion Life, 670 So.2d at 900-01 (emphasis in Cabinetree).
It is apparent that the instant case is different from bothCompanion Life and Cabinetree in this one material respect: The trial courts in those two cases found that the parties seeking an order compelling arbitration had waived that right, while here the trial court found that Golden had not waived its right. Nonetheless, we conclude that the reasoning of those cases and their factual similarity to this case demonstrates that the trial court here abused its discretion in finding that Golden had not waived its contractual right to insist that Hood arbitrate his retaliatory discharge claim. Like the defendants in Companion Life and Cabinetree, the defendant in this case responded to the plaintiff's complaint not by seeking enforcement of the arbitration agreement but by invoking the judicial process, by removing the case to a federal court and engaging with the plaintiff's counsel to schedule how the litigation would proceed to trial in that forum. Golden attempts to explain that its removal of the case to the federal court did not represent a decision to proceed in that judicial forum but that it was, rather, merely a bid to increase its chances of obtaining an order compelling Hood to arbitrate his claim. Golden submits that arbitration is generally looked upon more favorably in federal courts than in most Alabama state courts. Even if we were to accept the truth of that proposition, it still does not explain why Golden, upon removal, failed to notify immediately either Hood or the federal district court that Golden would seek arbitration instead of resolving the dispute in the federal judicial forum. The Court of Appeals' opinion in Cabinetree does suggest that removal accompanied by an immediate motion to stay proceedings pending arbitration would indicate an intent to resolve the controversy through arbitration.[1] However, it was not until at least March 27, 1997, more than three months after removal and two months after the parties' counsel had met to discuss how the federal litigation would proceed, that Golden gave notice in correspondence and in its answer that it intended to enforce the arbitration agreement. This unexplained delay, after removal, in seeking arbitration, and Golden's proceeding as if the case would be resolved in the federal court substantially prejudiced Hood in exactly the same way the delay prejudiced the plaintiff in Companion Life: by allowing him to spend both time and money having the case remanded for a trial in the proper state forum, expenses that could have been avoided had Golden given timely notice of its intent to arbitrate.
Golden responds with the argument that its initial answer, unlike that of the defendant in Companion Life, clearly pleaded that the plaintiff's claim was subject to arbitration pursuant to a contract. Golden emphasizes that in Companion Life it was only after the case was remanded to the state court that the defendant filed an amended answer asserting, *Page 346 
for the first time, the applicability of the arbitration agreement. See 670 So.2d at 898. Golden argues that because its answer in this case stated that Hood's claim is subject to an arbitration agreement, "it is both logically and legally impossible for [Golden] to have waived its right to arbitrate." Brief of respondent, at 20. As authority for this proposition, Golden refers us to Ex parte Merrill Lynch, Pierce, Fenner Smith, Inc., 494 So.2d 1 (Ala. 1986).
In Ex parte Merrill Lynch, this Court held that the defendants had not substantially invoked the litigation process and had therefore not waived the right to seek arbitration, despite the fact that the defendants had (1) filed a motion to dismiss, (2) filed a motion to stay proceedings to await the outcome of pending federal multidistrict class action litigation, and (3) waited over one year after the filing of the complaint before actually filing a motion to stay pending arbitration. Indeed, the Court did appear to find it significant that the defendant had not answered the plaintiff's complaint before moving to compel arbitration, noting that " '[m]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not constitute a waiver,' " and that " 'the earliest point at which waiver of the right to arbitration may be found "is when the other party files an answer on the merits." ' " Ex parteMerrill Lynch, 494 So.2d at 3, quoting Clar Productions, Ltd.v. Isram Motion Pictures, 529 F. Supp. 381, 383 (S.D.N.Y. 1982) (citations omitted).
However, Golden reads Ex parte Merrill Lynch too broadly. It is normally true that the earliest point at which a party might be said to waive arbitration would be in its answer, because in most cases a party's answer would be the first pleading filed in response to a complaint. And we would also affirm that simply failing to plead in one's answer that a plaintiff's claims are subject to arbitration will not in itself constitute a waiver. However, neither principle compels the conclusion that a defendant's filing an answer affirmatively pleading an arbitration agreement necessarily precludes the possibility that the defendant has nonetheless already waived its right to arbitrate. Under the particular circumstances of Ex parteMerrill Lynch, the motions filed by the defendants and their delay in moving to compel arbitration did not represent a decision on their part to proceed in the judicial forum, but they were, rather, a response to the possibility that the plaintiff's claim would be litigated in a pending federal class action. See Ex parte Smith, 706 So.2d 704, 706 (Ala. 1997) (discussing and distinguishing Ex parte Merrill Lynch). We might assume that if Golden had immediately followed it its removal with service of its answer pleading an arbitration defense, such action would have been sufficient to put Hood on notice that Golden still intended in the federal court to reserve its right to seek arbitration. Cf. Terminix Int'l Co.v. Jackson, 669 So.2d 893, 896 (Ala. 1995) (holding that the plaintiff did not establish a waiver where the defendant's answer had put the plaintiff on notice of an arbitration defense). Filing an answer at such a time might have indicated that Golden intended to pursue arbitration instead of a federal judicial remedy, and it would have given Hood the opportunity to avoid spending the resources necessary to have the case remanded to the state court for a trial. As it was, Golden removed the case to the federal court and proceeded as if it was preparing for a judicial resolution of Hood's claim. Golden's answer pleading the arbitration agreement simply came too late, after Golden had substantially invoked the judicial process, to the substantial prejudice of Hood.
For the foregoing reasons, we conclude that the trial court abused its discretion in finding that Golden had not waived its right to seek arbitration pursuant to its contract with Hood. In light of our resolution of this issue, we pretermit any discussion of Hood's arguments that the arbitration agreement was invalid as lacking mutuality of obligation and remedy. Hood has shown, and we hold, that he is entitled to an order of the trial court setting aside its order staying judicial proceedings pending arbitration; his petition for the writ of mandamus is granted, and the trial court is directed to set aside that order.
WRIT GRANTED. *Page 347 
ALMON, KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
[1] " 'Kraftmaid if it wanted arbitration could have moved for a stay of Cabinetree's suit in the Wisconsin state court. It did not. Instead it removed the case to federal district court. Bydoing so without at the same time asking the district court foran order to arbitrate, it manifested an intention to resolvethe dispute through the processes of the federal court.' "Companion Life, supra, 670 So.2d at 900, quoting Cabinetree, supra (emphasis added).