811 So.2d 514 (2001)
JERICHO MANAGEMENT, INC.
v.
FIDELITY NATIONAL TITLE INSURANCE COMPANY OF TENNESSEE.
1980537.
Supreme Court of Alabama.
July 13, 2001.
Stephen D. Heninger of Heninger, Burge, Vargo & Davis, L.L.P., Birmingham; and John R. Lavette of Morris & Lavette, P.C., Birmingham, for appellant.
Guy V. Martin, Jr., and Mark S. Elwood of Martin, Rawson & Woosley, P.C., Birmingham, for appellee.
PER CURIAM.
This is the second time these parties have been before us. For an explanation of the facts giving rise to this dispute, see Fidelity National Title Insurance Co. of Tennessee v. Jericho Management, Inc., 722 So.2d 740 (Ala.1998) (Jericho I). In Jericho I, we reversed the order of the trial court denying a motion by Fidelity National Title Insurance Company of Tennessee ("Fidelity") to compel arbitration of claims made by Jericho Management, Inc. ("Jericho"); we remanded for the trial court to determine whether Fidelity had waived its right to arbitrate Jericho's claims. On remand, the trial court held that Fidelity had not waived its right to compel arbitration and, therefore, granted Fidelity's motion to compel arbitration.
Jericho filed a notice of appeal from the trial court's order granting Fidelity's motion to compel arbitration; we treat its notice of appeal as a petition for the writ of mandamus. See Henderson v. Superior Ins. Co., 628 So.2d 365 (Ala. 1993). "A petition for the writ of mandamus is the appropriate means by which to challenge a trial court's order compelling arbitration." Ex parte Hood, 712 So.2d 341, 343 (Ala.1998).[1]
*515 This Court has written: "A writ of mandamus is an extraordinary remedy that requires the showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court." Ex parte McNaughton, 728 So.2d 592, 594 (Ala.1998).
Jericho argues that the trial court abused its discretion by compelling arbitration of its claims because, it asserts, Fidelity had waived its right to arbitrate by substantially invoking the litigation process by waiting "nineteen months without raising the issue of arbitration." Jericho further argues that Fidelity "refused to allow discovery ordered by the trial court and filed the first pleading referring to arbitration only after its attempts to block discovery were addressed by the trial court."
Fidelity argues that there are "extenuating circumstances" indicating that it did not waive its right to seek arbitration. In Companion Life Insurance Co. v. Whitesell Manufacturing, Inc., 670 So.2d 897, 899 (Ala.1995), this Court stated:
"Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration."
Fidelity asserts that it did not have a reasonable chance of compelling arbitration until the United States Supreme Court decided Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Fidelity relies on Ex parte Phelps, 672 So.2d 790 (Ala.1995). In Phelps, the defendant moved to compel arbitration on May 30, 1995, five months after the Supreme Court had released its decision in Allied-Bruce. This Court held:
"[U]ntil January 1995, [the defendant] could have reasonably believed that an attempt to compel arbitration would have been fruitless under our then existing law. Moreover, [the defendant] did move to compel arbitration fairly soon after the Supreme Court's decision in Allied-Bruce made it more practical to do so. Given these facts and given the strong federal policy favoring arbitration, we conclude that the trial court was acting well within its discretion in granting the motion to compel arbitration."
Phelps, 672 So.2d at 793.
Fidelity moved on July 31, 1995, to compel arbitration; that was only seven months after the Supreme Court had decided Allied-Bruce. Before moving to compel arbitration, but after the Supreme Court had decided Allied-Bruce, Fidelity responded to Jericho's interrogatories and requests for production of documents, participated in a deposition in which Jericho deposed Fidelity's former counsel, answered Jericho's amended complaint, and amended its answer to the original complaint. While Fidelity's involvement in the litigation process is greater than that of the defendant in Phelps, we do not believe that its involvement is so substantial as to indicate "an intention to abandon the right [to compel arbitration] in favor of the judicial process." Companion Life Ins. Co., 670 So.2d at 899.
Moreover, even if we were to conclude that Fidelity had substantially involved itself in the litigation process, we do not believe Jericho met its burden of showing that it was substantially prejudiced. See Companion Life Ins. Co., 670 So.2d at 899. *516 This Court has approved the proposition that "[e]ven if the [c]ourt assumes that there was invocation of the litigation process by the defendants, a finding of waiver cannot be made absent a showing of prejudice to the party opposing arbitration." Thompson v. Skipper Real Estate Co., 729 So.2d 287, 291 (Ala.1999)(quoting cases; quotation marks omitted). Again, we note that a party petitioning for the writ of mandamus must show a clear legal right to the order sought, McNaughton, 728 So.2d at 594, and that "[n]o rigid rule exists for determining what constitutes a waiver of the right to arbitrate; [this issue must be resolved] on the particular facts of each case." Companion Life Ins. Co., 670 So.2d at 899. Jericho has presented no facts indicating that it was substantially prejudiced by Fidelity's involvement in the litigation process.[2] Indeed, most of what has occurred in the present litigation after Allied-Bruce was decided has benefited Jericho.
For the foregoing reasons, we conclude that Fidelity did not waive its right to arbitrate and, thus, that the trial court acted within its discretion in compelling Jericho to arbitrate its claims against Fidelity. Accordingly, we deny Jericho's petition for the writ of mandamus.
WRIT DENIED.
HOUSTON, SEE, BROWN, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., and LYONS, JOHNSTONE, and WOODALL, JJ., dissent.
JOHNSTONE, Justice (dissenting).
This case is the second time that these parties have been before us. Fidelity Nat'l Title Ins. Co. of Tennessee v. Jericho Mgmt., Inc., 722 So.2d 740 (Ala.1998) (Jericho I). In Jericho I, we reversed the order of the trial court denying Fidelity's motion to compel arbitration of Jericho's claims and remanded the cause to the trial court. However, this Court did not address the issue of whether Fidelity waived its right to arbitrate Jericho's claims.
On remand, Jericho asserted that Fidelity had waived its right to compel arbitration of its claims. The trial court, finding that "there has not been a waiver of the right to compel arbitration," granted Fidelity's motion to compel arbitration. Jericho seeks review by appeal, which we treat as a petition for a writ of mandamus according to the practice we established in Henderson v. Superior Ins. Co., 628 So.2d 365 (Ala.1993).
"A petition for a writ of mandamus is the appropriate means by which to challenge a trial court's order compelling arbitration." Ex parte Hood, 712 So.2d 341, 343 (Ala.1998). "A writ of mandamus is an extraordinary remedy that requires the showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court." Ex parte McNaughton, 728 So.2d 592, 594 (Ala.1998).
Jericho claims that the trial court abused its discretion by compelling arbitration of its claims. Jericho argues that Fidelity waived its right to arbitrate.
The materials before us present the following facts:
(1) On December 30, 1993, Jericho sued Fidelity for breach of contract, bad faith *517 refusal to pay an insurance claim, negligence, wantonness, and fraud. Jericho propounded interrogatories to Fidelity and requested the production of certain documents.
(2) On February 22, 1994, Fidelity answered Jericho's interrogatories and made the requested documents available for inspection.
(3) On February 22, 1994, Fidelity propounded interrogatories to Jericho and requested certain documents.
(4) On April 19, 1994, Fidelity answered the complaint and demanded "A JURY TRIAL UPON ALL ISSUES."
(5) On July 14, 1994, Jericho noticed the depositions of Lance Perna, Ralph Scott, and William Yarborough.
(6) On July 25, 1994, Fidelity moved to compel Jericho to answer its interrogatories and to respond to its request for the production of certain documents.
(7) On July 25, 1994, Jericho agreed to answer Fidelity's interrogatories and to respond to the request for production. The parties set dates for the depositions noticed by Jericho.
(8) On August 4, 1994, the parties deposed Ralph Scott.
(9) On August 9, 1994, Fidelity moved to compel the deposition of Michael Shields, a managerial employee of Jericho. Fidelity also filed a motion in limine to prevent Jericho and its counsel from arguing, offering evidence of, or commenting on any alleged conflict of interest harbored by Fidelity's counsel.
(10) On August 9, 1994, Jericho moved to recuse Fidelity's counsel on the ground of conflict of interest.
(11) On August 12, 1994, Jericho served Fidelity with requests for admissions.
(12) On September 9, 1994, the trial court entered an order disqualifying Fidelity's attorney from representing Fidelity in this action.
(13) On September 14, 1994, Fidelity moved the trial court to extend the time for responding to the request for admissions and for producing documents.
(14) On September 14, 1994, Fidelity's counsel moved to withdraw as counsel of record.
(15) On October 3, 1994, the trial court granted the motion to withdraw filed by Fidelity's counsel and granted the motion filed by Fidelity for an extension of time to respond to discovery.
(16) On October 5, 1994, Fidelity's new counsel filed a notice of appearance.
(17) On October 7, 1994, Fidelity moved the trial court for permission to answer Jericho's request for admissions and filed responses to Jericho's request for admissions.
(18) On November 21, 1994, Jericho answered Fidelity's interrogatories. Jericho produced documents to Fidelity's new counsel.
(19) On November 28, 1994, Jericho moved to compel Fidelity to produce certain documents that Jericho had requested on December 30, 1993.
(20) On January 12, 1995, Jericho requested Fidelity to produce certain documents and things.
(21) On February 7, 1995, the trial court ordered Fidelity to produce the documents requested by Jericho on December 30, 1993.
(22) On February 8, 1995, Jericho served a deposition subpoena on Fidelity's former counsel.
(23) On February 14, 1995, Fidelity filed supplemental responses to Jericho's interrogatories and requests for production of documents.
*518 (24) On February 28, 1995, Jericho amended its complaint by adding two defendants.
(25) On March 28, 1995, Jericho deposed Fidelity's former counsel.
(26) On April 3, 1995, Fidelity answered Jericho's amended complaint and amended its answer to the original complaint, but did not withdraw its demand for a jury trial.
(27) On June 6, 1995, Jericho moved to extend the time for discovery. In its motion, Jericho asserted that it had noticed the depositions of various employees of Fidelity, but Fidelity was insisting that discovery had been "cut off."
(28) On July 6, 1995, Jericho further answered interrogatories.
(29) On July 31, 1995, Fidelity moved to compel arbitration.
(30) On August 3, 1995, the trial court set the case for trial.
(31) On September 15, 1995, in open court, Fidelity moved for summary judgment.
(32) On September 29, 1995, Jericho responded in opposition to Fidelity's motion to compel arbitration.
(33) On October 2, 1995, the trial court denied Fidelity's motion to compel arbitration.
(34) On October 13, 1995, Fidelity moved for a continuance of the trial.
(35) On October 16, 1995, Fidelity moved "to reconsider" the October 2, 1995, denial of its motion to compel arbitration. The trial court granted Fidelity a continuance of the trial and reset the trial for February 20, 1996.
(36) On November 13, 1995, Fidelity again moved for summary judgment.
(37) On November 16, 1995, Jericho responded to the summary judgment motion and moved to compel the depositions that had been noticed for approximately one year.
(38) On November 17, 1995, Jericho moved to compel Fidelity to produce Lance Perna and William Yarborough for deposition.
(39) On November 27, 1995, Fidelity filed an opposition to Jericho's motion to compel the depositions of Perna and Yarborough.
(40) On December 4, 1995, Jericho responded to Fidelity's summary judgment motion.
(41) On December 6, 1995, the trial court conducted a hearing on Fidelity's summary judgment motion.
(42) On December 6, 1995, in open court, Fidelity again moved to reconsider the October 2, 1995, order denying its motion to compel arbitration. In support of its motion, Fidelity filed also an affidavit from Bernard M. Rifkin, "Chief Counsel, Emeritus, of Ticor Title Guarantee Company," and a member of the committee that drafted the 1987 amendments to the "American Land Title Association Owner's and Loan Policies."
(43) On December 11, 1995, in open court, Jericho moved to strike or to exclude the affidavit submitted by Fidelity and to strike or exclude certain statements made by Fidelity's counsel at the December 6, 1995, hearing.
(44) On December 18, 1995, Fidelity filed a summary of the arguments it made at the December 6, 1995, hearing.
(45) On December 29, 1995, the trial court denied Fidelity's motion for a summary judgment and its motion "to reconsider."
(46) On January 16, 1996, Fidelity moved for permission to appeal the trial court's order denying its summary judgment motion.
*519 (47) On January 22, 1996, Fidelity moved to supplement the record on the motion to compel arbitration with an affidavit executed by Lance Perna on January 5, 1996.
(48) On February 7, 1996, Fidelity filed a notice of appeal from the trial court's order denying the motion to compel arbitration.
(49) On September 12, 1997, this Court affirmed the trial court's order denying the motion to compel arbitration.
(50) On April 17, 1998, on application for rehearing, this Court withdrew its opinion of September 12, 1997, substituted a new opinion, and reversed the trial court's order denying the motion to compel arbitration, but did not address the issue of waiver.
(51) On June 4, 1998, following remand, Jericho filed an opposition to Fidelity's motion to compel arbitration and contended that Fidelity had waived its right to compel arbitration. To support its opposition, Jericho filed an affidavit executed by Mike Shields. Shields stated that, by the time the complaint had been filed, the collateral at issue had deteriorated so much that it had lost $10,000 or more in value. He stated further that, over the 18 months following the filing of the complaint, the subject collateral had lost another $10,000 or so in value. Shields said that, as a result of Fidelity's delay in requesting arbitration, Jericho incurred expenses of litigation, including responding to Fidelity's discovery requests.
(52) On November 3, 1998, in open court, Jericho filed a supplemental brief addressing the issue of Fidelity's waiver of its right to compel arbitration.
(53) On November 4, 1998, Fidelity responded to Jericho's supplemental brief.
Waiver of the right to compel arbitration may occur in several ways. Southern Sys., Inc. v. Torrid Oven Ltd., 105 F.Supp.2d 848 (W.D.Tenn.2000). "[A] party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration." Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995). "Conduct such as filing responsive pleadings while not asserting a right to arbitration, filing a counterclaim, filing pretrial motions, engaging in extensive discovery, use of discovery methods unavailable in arbitration, and litigation of issues on the [merits] have all been considered by courts to amount to a waiver of the right to arbitration." Southern Sys., 105 F.Supp.2d at 854 (citations omitted). "The use of pretrial discovery procedures by a party seeking arbitration may sufficiently prejudice the legal position of an opposing party so as to constitute a waiver of the party's right to arbitration." Stone v. E.F. Hutton & Co., 898 F.2d 1542, 1543 (11th Cir.1990). See also Companion Life Ins., supra. Moreover, a party's delay in seeking arbitration, its extensive participation in discovery, its motion for summary judgment, and the resulting prejudice to the opposing party constitute waiver. National Found. for Cancer v. A.G. Edwards & Sons, Inc., 821 F.2d 772 (D.C.Cir.1987). See also S & H Contractors, Inc. v. A.J. Taft Co., 906 F.2d 1507 (11th Cir.1990). The pursuit of a motion for summary judgment seeks an adjudication on the merits, Bean v. Craig, 557 So.2d 1249, 1253 (Ala.1990), and thus may constitute a waiver of the right to arbitrate, Com Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574 (2d Cir. 1991), Weight Watchers of Quebec Ltd. v. Weight Watchers Int'l, Inc., 398 F.Supp. 1057 (E.D.N.Y.1975), and Woody v. Sterling Aluminum Prods., Inc., 244 F.Supp. 84 (E.D.Mo.1965). "No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; [this issue must be resolved] on the particular facts of each *520 case." Companion Life Ins., 670 So.2d at 899. "`[P]rejudice to the other party, the party resisting arbitration, should weigh heavily in the decision whether to send the case to arbitration, as should the diligence or lack thereof of the party seeking arbitration did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?'" Ex parte Hood, 712 So.2d 341, 344 (Ala.1998) (quoting Companion Life Ins., 670 So.2d at 900) (emphasis added).
The case before us clearly establishes both essential elements of waiver of the right to arbitrate. First, Fidelity has substantially invoked the litigation process both in discovery and on the merits. Fidelity's participation on the merits has included not only filing an answer (demanding a jury trial!) and an amended answer but also seeking a dispositive adjudication by summary judgment. Second, the delay by Fidelity in seeking arbitration has substantially prejudiced Jericho not only by imposing on it expenses of litigation but also by delaying Jericho's remedy while the collateral at issue has further deteriorated to the extent of a loss of about $10,000 to Jericho.
Fidelity argues that the "extenuating circumstances test" excuses its invocation of and its participation in the litigation process, because Fidelity had "a reasonable basis for not seeking to arbitrate sooner than [it] did." Companion Life Ins., 670 So.2d at 900. Fidelity argues that its reasonable basis for not seeking to compel arbitration sooner was that Alabama prohibited specific enforcement of predispute provisions for binding arbitration before the January 1995 decision of the United States Supreme Court in Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). In support of its argument, Fidelity also cites Ex parte Phelps, 672 So.2d 790 (Ala.1995). In Ex parte Phelps, we affirmed the order of the trial court compelling arbitration. This Court held timely the defendant's motion to compel arbitration filed four months after the Allied-Bruce decision by the United States Supreme Court, because we found the defendant could have reasonably believed that an attempt to compel arbitration would have been "fruitless."
However, the case before us is factually distinguishable from the Phelps case in several ways. Fidelity waited seven months after the Allied-Bruce decision before moving to compel arbitration. Unlike the defendant's minimal participation in the litigation process in Phelps, Fidelity's was extensive. Fidelity demanded a jury trial and pursued a motion in limine; and, both before and after the release of Allied-Bruce, and long before Fidelity filed its motion to compel arbitration, Fidelity filed pleadings to the merits and took part in discovery. Fidelity filed an amended answer on the merits about three months after Allied-Bruce and about four months before the filing of the motion to compel arbitration. Additionally, rather than immediately appealing the trial court's order denying arbitration, Fidelity filed and litigated a motion for summary judgment. Fidelity did not appeal the trial court's order denying arbitration until over four months after the trial court denied Fidelity's motion to compel arbitration and over five weeks after the trial court denied Fidelity's motion for summary judgment and its motions to reconsider the denial of its motion to compel arbitration.
Moreover, Fidelity did not specifically assert below that it reasonably believed that any attempt to compel arbitration would have been fruitless. Likewise, Fidelity did not offer any evidence of any such belief. Fidelity merely relied on Phelps, supra, for the proposition that Fidelity had not waived its right to arbitrate.
For the foregoing reasons, the circumstances did not extenuate Fidelity's delay, Fidelity waived its right to arbitrate, and thus the trial court abused its discretion in *521 compelling Jericho to arbitrate its claims against Fidelity. Accordingly, we should grant the petition for a writ of mandamus and instruct the trial court to vacate its order compelling arbitration.
MOORE, C.J., and LYONS and WOODALL, JJ., concur.
NOTES
[1] But see Rule 4, Ala. R.App. P., as amended May 10, 2001, to be effective October 1, 2001. By that amendment, an order granting or denying a motion to compel arbitration will be reviewable by appeal.
[2] After the trial court denied Fidelity's motion to compel arbitration, Fidelity moved for a summary judgment rather than immediately appealing the trial court's order. However, Jericho presented no evidence of how Fidelity's filing this motion might have substantially prejudiced it.