779 So.2d 1171 (2000)
UNITED STATES PIPE AND FOUNDRY COMPANY, INC.
v.
Pete CURREN, Jr.
1971948.
Supreme Court of Alabama.
June 23, 2000.
Rehearing Denied September 1, 2000.
*1172 Robert K. Spotswood and Kenneth M. Perry of Bradley, Arant, Rose & White, L.L.P., Birmingham, for appellant.
J. Gusty Yearout and John G. Watts of Yearout, Myers & Traylor, P.C., Birmingham; and Mac Parsons, Bessemer, for appellee.
BROWN, Justice.
United States Pipe and Foundry Company, Inc. ("U.S. Pipe"), is the defendant in an action pending in the Jefferson Circuit Court, Bessemer Division. It appeals from an order denying its motion to compel arbitration.[1] We reverse and remand.

I. Facts and Procedural History

Shortly after beginning employment with U.S. Pipe, Pete Curren, Jr., entered into an automatic-payroll-deduction plan, whereby a portion of his paycheck would be deducted and deposited into his savings account with U.S. Pipe Credit Union. The payroll-deduction plan was offered as an employee benefit, and Curren participated in the plan for several years.
On January 2, 1997, Curren sued U.S. Pipe, alleging conversion, fraud, and breach of contract, all related to its administration of the payroll-deduction plan. The claims were based upon an allegation that U.S. Pipe had failed to transfer the deductions to the credit union in a timely manner.
On February 6, 1997, U.S. Pipe answered, pleading as an affirmative defense that "[Curren's] claims under the LMRA [Labor Management Relations Act of 1947] are barred by his failure to utilize the grievance and arbitration procedure contained in the collective bargaining agreements between U.S. Pipe and the union which represented [Curren] and other bargaining unit employees." U.S. Pipe also moved to vacate the court's conditional order certifying a class and removed the case to the United States District Court for the Northern District of Alabama, arguing that the payroll-deduction plan was covered under a November 1995 collective bargaining agreement ("CBA") entered into by U.S. Pipe and the United Steel Workers of America ("USWA"). In its notice of removal and in its accompanying *1173 brief, U.S. Pipe referred to the arbitrability of Curren's claims, stating that the "grievance and arbitration provisions of the Collective Bargaining Agreements applicable to [Curren's] employment with U.S. Pipe expressly reach `all disputes that may arise between them relevant to the provisions' of the Agreements." Thereafter, Curren moved to remand the case to the state court, arguing that the CBA was inapplicable because, he contended, the underlying claims were unrelated to the obligations and duties set forth in the CBA. The parties' attorneys met on April 11, 1997, pursuant to Rule 26(f), Fed.R.Civ.P., to formulate a comprehensive discovery schedule to govern the litigation in the district court. The scheduling agreement, signed by U.S. Pipe's attorney and filed with the district court, stated: "The cases[2] should be ready for trial by June 1998 and at this time are expected to take approximately 14 days each." In September 1997, the federal district court remanded the case to the state court.[3]
On December 15, 1997, U.S. Pipe filed a motion to stay the proceedings and to compel arbitration, pursuant to the terms of what it alleged to be a "valid, irrevocable, and enforceable contract entered into by Curren, through his bargaining representative." Curren filed an opposition to the motion to compel arbitration, arguing that the dispute was not within the terms of the CBA, but that even if it was, U.S. Pipe had waived its right to compel arbitration. On June 23, 1998, the trial court held a hearing and afterwards entered an order denying U.S. Pipe's motion to compel arbitration. The record does not reflect the court's reason for denying the motion to compel arbitration; the court merely made an entry on the case action summary stating that that motion had been denied.

II. Analysis

U.S. Pipe argues that the trial court erred in denying its motion to compel arbitration because, it says, an arbitration provision in the CBA clearly encompasses Curren's claims.
In 1995, the USWA and U.S. Pipe entered into a CBA governing hours of work, wages, and other terms and conditions of employment. The CBA also outlined grievance procedures, expressly stating that unresolved disputes would be submitted to arbitration.[4] The preamble contained the following language:
"[The CBA] evidences the desire of the parties hereto to promote and maintain harmonious relations between the Company and its employees, to abide by the Agreement in the settlement of any and all disputes that may arise between them relevant to the provisions incorporated herein, and the willingness of the Company to deal with them through the Union as their representative."
U.S. Pipe argues that the payroll-deduction plan is a benefit of employment, that it is closely related to wages and has been adopted into the CBA through custom, and that it is, therefore, subject to the grievance procedures set forth in the CBA. In support of this argument, U.S. Pipe offered the uncontradicted affidavits of Benny Smith, U.S. Pipe's personnel director, and Mike Stanley, international representative *1174 for the USWA. Both Smith and Stanley stated that any disputes regarding the manner in which U.S. Pipe administered payroll deductions were subject to the grievance procedures contained in the CBA. Stanley concluded that the payroll deduction plan was an employee benefit and that it was "the view of the union that this benefit, through custom and practice, has risen to the level of an implied term in the CBA." Curren presented nothing to dispute this assertion, other than a copy of the federal court's order remanding the case to the state court and a mere allegation that his claims concern a separate agreement he entered into with U.S. Pipe, i.e., the payroll-deduction plan, that is not governed by the CBA.
Upon close review, Curren's claims appear to challenge the manner in which U.S. Pipe administered a wage-related employee-benefit program, specifically, a payroll-deduction plan. The CBA states that it is "desire of the parties ... to abide by the [CBA] in the settlement of any and all disputes that may arise between them relevant to the provisions incorporated herein." We find that the provisions of the CBA are relevant to Curren's allegation that U.S. Pipe failed to transfer payroll deductions in a timely manner. Accordingly, we conclude that Curren's claims are subject to the arbitration provision contained within the CBA.
Curren argues that U.S. Pipe waived any right it may have had to compel arbitration, by not moving in the federal court to compel arbitration. In support of that argument, Curren cites Ex parte Hood, 712 So.2d 341 (Ala.1998).
In determining whether a party has waived its right to arbitrate, this Court has held:
"It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process, and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case."
Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995) (citations omitted). The courts will not lightly infer a waiver of the right to compel arbitration; thus, the burden on the party seeking to prove waiver is a heavy one. Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160 (Ala.1998).
The present case, while factually somewhat similar, is clearly distinguishable from Ex parte Hood. In Ex parte Hood, the defendant failed to give notice of its intention to enforce the arbitration agreement until three months after the case had been removed to the federal court and two months after the parties' counsel had met to discuss how the federal litigation would proceed. This Court stated:
"We might assume that if [the defendant] Golden had immediately followed its removal with service of its answer pleading an arbitration defense, such action would have been sufficient to put Hood on notice that Golden still intended in the federal court to reserve its right to seek arbitration. Cf. Terminix Int'l Co. v. Jackson, 669 So.2d 893, 896 (Ala.1995) (holding that the plaintiff did not establish a waiver where the defendant's answer had put the plaintiff on notice of an arbitration defense). Filing an answer at such a time might have indicated that Golden intended to pursue arbitration instead of a federal judicial remedy, and it would have given Hood the opportunity to avoid spending the *1175 resources necessary to have the case remanded to the state court for a trial. As it was, Golden removed the case to the federal court and proceeded as if it was preparing for a judicial resolution of Hood's claim. Golden's answer pleading the arbitration agreement simply came too late, after Golden had substantially invoked the judicial process, to the substantial prejudice of Hood."
712 So.2d at 346. Under the particular circumstances of Ex parte Hood, this Court concluded that the defendant, by its unexplained delay, after removal, in seeking to resolve the controversy through arbitration, had waived its right to compel arbitration.
As noted earlier in this opinion, U.S. Pipe asserted the affirmative defense of arbitration in its initial answer. See Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1, 3 (Ala.1986)(indicating that a party clearly has not waived the right to arbitrate if it has asserted that right in its initial answer on the merits). U.S. Pipe referred to arbitration in its notice of removal and in its discovery-plan report. We can find no persuasive evidence indicating that U.S. Pipe intended to waive or abandon its right to seek arbitration in accordance with the grievance procedure set forth in the CBA.
For the foregoing reasons, the trial court's order denying U.S. Pipe's motion to compel arbitration is reversed and the cause is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, LYONS, and ENGLAND, JJ., concur.
COOK, J., dissents.
COOK, Justice (dissenting).
United States Pipe and Foundry Company appeals from the trial court's denial of its motion to compel arbitration. The plaintiff, an employee of U.S. Pipe, sued U.S. Pipe, alleging fraud, breach of contract, and conversion of his payroll-deduction moneys that were to be transferred to his savings account at the company credit union. U.S. Pipe argues that, under the Labor Management Relations Act of 1947 ("LMRA"), the plaintiff's claims are preempted by the grievance and arbitration procedure contained in the collective bargaining agreement ("CBA") between U.S. Pipe and the union.
I do not agree that the plaintiffs claims fall within the CBA. The plaintiff entered into an individual agreement with U.S. Pipe allowing for an automatic deduction from his wages; that individual agreement did not provide for arbitration as a grievance mechanism. We should not conclude that this individual agreement was within the scope of the CBA, simply on the basis that it involved the plaintiffs "wages." The CBA governs "hours of work, wages, and other terms and conditions of employment." However, the plaintiffs claims are not created by the terms of the CBA. Therefore, there is no basis for a conclusion that his claims are covered by the CBA.
NOTES
[1] A direct appeal is the proper procedure by which to challenge a trial court's denial of a motion to compel arbitration. A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358 (Ala. 1990).
[2] On February 12, 1997, U.S. Pipe filed a motion to consolidate Curren's case with a case filed by Victor Argo. See Jim Walter Resources, Inc., v. Argo, 779 So.2d 1167 (Ala. 2000), decided this date.
[3] The federal court's order states, in pertinent part:

"Because these claims do not implicate obligations or duties created by the express or implied terms of the relevant Collective Bargaining Agreements, there is no basis for federal jurisdiction. Thus, these cases were improperly removed and the motions to remand are hereby GRANTED."
[4] The CBA contains the following provision:

"If the grievance is not settled with any of the three steps outlined above, the Union shall have ten (10) working days from the date the Union Representative receives the Company's written answer in Step 3, to submit the grievance to arbitration."