BOLIN, Justice.
ClimaStor IV, L.L.C. (“ClimaStor”), appeals from an order of the Montgomery Circuit Court denying its motion to compel arbitration.

Facts and Procedural History

On July 5, 2002, ClimaStor, a Louisiana limited liability company, contracted with Goodwyn, Mills, & Cawood, Inc. (“GMC”), an architectural and engineering firm, to design an 80,000-square-foot climate-controlled storage facility to be constructed in Montgomery. On January 21, 2003, Cli-maStor entered into a contract with Marshall Construction, L.L.C. (“Marshall”), an Alabama limited liability company, to construct the climate-controlled storage facility designed by GMC for a contract price of $1,855,900. The contract between Cli-maStor and GMC required GMC to administer the construction contract. The contract between ClimaStor and Marshall required Marshall to have substantially completed construction of the storage facility by July 4, 2003. The contract also contained the following arbitration agreement:
“4.6.1 Any Claim arising out of or related to the Contract, except, Claims relating to aesthetic effect and except those waived as provided for in Subpara-graphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect [GMC] or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by media *454 tion in accordance with the provisions of Paragraph 4.5.
“4.6.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.”
After Marshall had completed construction of the storage facility and ClimaStor had taken possession, Marshall submitted its final two applications for payment to ClimaStor, each of which had been approved by GMC, as the administrator of the construction contract. However, Cli-maStor withheld payment of the final two applications because of certain alleged deficiencies in the construction of the storage facility.
On July 1, 2004, Marshall filed in the Probate Court of Montgomery County a verified statement of lien against Clima-Stor in the amount of $114,548.15 plus interest. On January 3, 2005, Marshall sued ClimaStor in the Montgomery Circuit Court under § 35-11-222, Ala.Code 1975, seeking to satisfy its lien.
On February 8, 2005, ClimaStor’s Louisiana-based counsel notified Marshall’s counsel by letter that ClimaStor would “take steps to have the litigation stayed and the matter referred to arbitration” in accordance with the terms of the contract between ClimaStor and Marshall. However, rather than have the matter stayed and referred to arbitration, ClimaStor’s Alabama counsel, on February 10, 2005, filed a notice of removal to the United States District Court for the Middle District of Alabama. ClimaStor specifically stated in its notice of removal that the removal was being filed “with full reservation of any and all defenses, objections and exceptions, including its right to seek arbitration of the claims asserted in the Complaint .... ”
On February 17, 2005, ClimaStor filed an answer and a counterclaim in the United States District Court for the Middle District of Alabama. ClimaStor specifically stated that in submitting its answer, it was “reserving all of its rights and defenses, including its right to seek arbitration of the claims asserted in the Complaint .... ” ClimaStor also asserted in paragraph 11 of its answer the following:
“The Complaint is premature in light of the terms of [Marshall’s] contract with ClimaStor which provides for arbitration. This action should be dismissed or, in the alternative, stayed, pending final, binding arbitration between Clima-Stor and Marshall.”
ClimaStor alleged in its counterclaim that Marshall had breached the construction contract by failing to achieve substantial completion of the project by July 4, 2003; by failing to construct the storage facility according to the plans, specifications, and building codes; by failing to construct a storage facility that was free from defects; and by failing to make permanent repairs to cure the defects. ClimaStor further asserted in the counterclaim that it had withheld payment of the balance due Marshall under the construction contract. ClimaStor expressly stated in the counterclaim that it was asserting the counterclaim “without intending to waive, and expressly reserving, its right to have the claims asserted by Marshall and the claims asserted in this counterclaim decided by final, binding arbitration.”
On March 14, 2005, Marshall answered ClimaStor’s counterclaim and asserted counterclaims against ClimaStor alleging breach of contract and failure to make *455 timely payments pursuant to § 8-29-2 et seq., Ala.Code 1975. Marshall also moved on that same date to have the matter remanded to the Montgomery Circuit Court.
On March 29, 2005, ClimaStor filed a memorandum in opposition to Marshall’s motion to remand. On April 5, 2005, Marshall filed a reply to ClimaStor’s memorandum in opposition to the motion to remand. On May 24, 2005, the United States District Court entered an order finding that ClimaStor had faded to sufficiently demonstrate diversity of citizenship necessary for jurisdiction in the district court. However, the district court allowed ClimaStor the opportunity to submit supplemental pleadings disclosing its citizenship and that of Marshall. On June 1, 2005, ClimaStor filed its supplemental memorandum in opposition to the motion to remand. On June 8, 2005, the United States District Court entered an order granting Marshall’s motion to remand.
On August 23, 2005, ClimaStor’s counsel again notified Marshall’s counsel by letter that ClimaStor would “take steps to have the litigation stayed and the matter referred to arbitration” in accordance with the terms of their contract. On September 19, 2005, ClimaStor filed demands for arbitration against both Marshall and GMC with the American Arbitration Association seeking damages totaling $787,431.46.
On October 4, 2005, Marshall moved the circuit court to for a temporary restraining order and a preliminary injunction enjoining ClimaStor and the American Arbitration Association from participating in arbitration proceedings. Marshall contended that ClimaStor had waived its right to arbitration by substantially invoking the litigation process. On that same date, the circuit court entered an order granting Marshall’s temporary restraining order.
On October 7, 2005, ClimaStor moved the circuit court to stay the proceedings and to compel arbitration. On November 1, 2005, ClimaStor filed its brief in opposition to Marshall’s motion for a preliminary injunction and in support of its motion to compel arbitration. On that same day, Marshall filed its brief and evidentiary submission in opposition to the motion to stay and to compel arbitration. On November 7, 2005, Marshall filed its response to ClimaStor’s brief in opposition to the motion for a preliminary injunction and in support of the motion to compel arbitration.
Following a hearing, the circuit court, on November 8, 2005, ordered the parties to mediate their claims. Mediation was unsuccessful. Thereafter, the circuit court set for hearing the still pending motions for a preliminary injunction and to compel arbitration. Each party filed a supplemental submission in support of its respective motion. Following a hearing, the circuit court, on August 7, 2006, entered an order denying ClimaStor’s motion to stay the proceedings and to compel arbitration, finding that ClimaStor had waived its right to arbitration. This appeal followed.

Standard of Review

No ore tenus testimony was presented to the trial court; therefore, “ ‘the trial court is in no better — or different— position than this Court to decide the legal significance of a party’s conduct,”’ Hales v. ProEquities, Inc., 885 So.2d 100, 105 (Ala.2003) (quoting Karl Storz Endoscopy-America, Inc. v. Integrated Med. Sys., Inc., 808 So.2d 999, 1008 (Ala.2001)), and we review de novo the trial court’s determination that a party has waived its right to arbitration.

Discussion

The sole issue before this Court on appeal is whether ClimaStor waived its *456 right to arbitration by substantially invoking the litigation process.[1] This Court has stated:
“Our review of the issue whether a party has waived its right to arbitration by substantially invoking the litigation process is governed by the standard enunciated in Companion Life Insurance Co. v. Whitesell Manufacturing, Inc., 670 So.2d 897, 899 (Ala.1995):
“ ‘It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party’s participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks of an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case.’
“Both substantial invocation of the litigation process and prejudice must be present to establish waiver. Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1 (Ala.1986). Because of the strong federal policy applicable to arbitration proceedings set forth in the Federal Arbitration Act, 9 U.S.C. § 1 et seq., one seeking to establish a waiver of arbitration bears a heavy burden. SouthTrust Bank v. Bowen, 959 So.2d
624 (Ala.2006); Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160 (Ala.1998).”
Paw Paw’s Camper City, Inc. v. Hayman, 973 So.2d 344, 347 (Ala.2007).
Marshall argues that ClimaStor waived its right to arbitration by removing the lien action to federal court; by filing an answer and asserting a counterclaim to be determined “at trial”; by opposing remand of the case to the Montgomery Circuit Court; by failing to move to compel arbitration in the federal district court; and by waiting approximately four months following remand to move the circuit court to compel arbitration. Relying on this Court’s decision in U.S. Pipe & Foundry Co. v. Curren, 779 So.2d 1171 (Ala.2000), ClimaStor argues that it did not substantially invoke the litigation process. In Curren, the plaintiff sued his employer, U.S. Pipe and Foundry Company, Inc., alleging conversion, fraud, and breach of contract, all related to its administration of a payroll-deduction plan that the plaintiff had enrolled in when he was first employed by U.S. Pipe. U.S. Pipe answered the complaint asserting the following affirmative defense: “[The plaintiffs] claims under the LMRA [Labor Management Relations Act of 1947] are barred by his failure to utilize the grievance and arbitration procedure contained in the collective bargaining agreements between U.S. Pipe and the union which represented [the plaintiff] and other bargaining unit employees.” 779 So.2d at 1172. U.S. Pipe removed the case to the United States District Court for the Northern District of Alabama, contending that the payroll-deduction plan was covered under a November 1995 collective-bargaining agreement entered into by U.S. Pipe and the United Steel Workers of America. In its notice of *457 removal and accompanying brief, U.S. Pipe referred to the arbitrability of the plaintiffs claims, stating that the “ ‘grievance and arbitration provisions of the Collective Bargaining Agreements applicable to [the plaintiffs] employment with U.S. Pipe expressly reach “all disputes that may arise between them relevant to the provisions” of the Agreements.’ ” 779 So.2d at 1173.
The parties’ attorneys reached a scheduling agreement pursuant to Rule 26(f), Fed.R.Civ.P., to govern the litigation of the matter in the federal district court. The scheduling agreement indicated that the matter would be ready for trial by June 1998. The scheduling agreement was signed by U.S. Pipe’s attorney and was filed with the federal district court. Thereafter, the federal district court remanded the case to the Jefferson Circuit Court upon the plaintiffs motion. Cuiren, supra.
U.S. Pipe moved the trial court to stay the proceedings and to compel arbitration. The plaintiff opposed the motion to compel arbitration, arguing, among other things, that U.S. Pipe had waived its right to compel arbitration. The trial court entered an order denying U.S. Pipe’s motion to compel arbitration, and U.S. Pipe appealed.
The plaintiff argued on appeal that U.S. Pipe had waived any right it had to compel arbitration by failing to move in the federal court to compel arbitration. The plaintiff relied on Ex parte Hood, 712 So.2d 341 (Ala.1998), a case Marshall also relies on. This Court addressed the issue of waiver by distinguishing Ex paite Hood as follows:
“The present case, while factually somewhat similar, is clearly distinguishable from Ex parte Hood. In Ex parte Hood, the defendant failed to give notice of its intention to enforce the arbitration agreement until three months after the case had been removed to the federal court and two months after the parties’ counsel had met to discuss how the federal litigation would proceed. This Court stated:
“ ‘We might assume that if [the defendant] Golden had immediately followed its removal with service of its answer pleading an arbitration defense, such action would have been sufficient to put Hood on notice that Golden still intended in the federal court to reserve its right to seek arbitration. Cf. Terminix Int’l Co. v. Jackson, 669 So.2d 893, 896 (Ala.1995) (holding that the plaintiff did not establish a waiver where the defendant’s answer had put the plaintiff on notice of an arbitration defense). Filing an answer at such a time might have indicated that Golden intended to pursue arbitration instead of a federal judicial remedy, and it would have given Hood the opportunity to avoid spending the resources necessary to have the case remanded to the state court for a trial. As it was, Golden removed the case to the federal court and proceeded as if it was preparing for a judicial resolution of Hood’s claim. Golden’s answer pleading the arbitration agreement simply came too late, after Golden had substantially invoked the judicial process, to the substantial prejudice of Hood.’
“712 So.2d at 346. Under the particular circumstances of Ex paite Hood, this Court concluded that the defendant, by its unexplained delay, after removal, in seeking to resolve the controversy through arbitration, had waived its right to compel arbitration.
“As noted earlier in this opinion, U.S. Pipe asserted the affirmative defense of arbitration in its initial answer. See Ex parte Merrill Lynch, Pierce, Fenner & *458 Smith, Inc., 494 So.2d 1, 3 (Ala.1986) (indicating that a party clearly has not waived the right to arbitrate if it has asserted that right in its initial answer on the merits). U.S. Pipe referred to arbitration in its notice of removal and in its discovery-plan report. We can find no persuasive evidence indicating that U.S. Pipe intended to waive or abandon its right to seek arbitration in accordance with the grievance procedure set forth in the [collective-bargaining agreement].”
Curren, 779 So.2d at 1174-75. See also the companion case of Jim Walter Res., Inc. v. Argo, 779 So.2d 1167 (Ala.2000).
We find Curren dispositive of the issue presented in this case. Before ClimaStor removed the case to the federal district court, it notified Marshall of its intent to “take steps to have the litigation stayed and the matter referred to arbitration” in accordance with the terms of the contract between ClimaStor and Marshall. Clima-Stor specifically referenced arbitration in its notice of removal by stating that the case was being removed “with full reservation of any and all defenses, objections and exceptions, including its right to seek arbitration of the claims asserted in the Complaint .... ” Promptly after removing the case to the federal district court, Clima-Stor filed its initial answer, again “reserving all of its rights and defenses, including its right to seek arbitration of the claims asserted in the Complaint .... ” More importantly, like U.S. Pipe in Curren, Clima-Stor asserted its arbitration defense in its initial answer, stating:
“The Complaint is premature in light of the terms of [Marshall’s] contract with ClimaStor which provides for arbitration. This action should be dismissed or, in the alternative, stayed, pending final, binding arbitration between Clima-Stor and Marshall.”
Although ClimaStor asserted a counterclaim against Marshall, it did so with the express reservation that it was not waiving its right to have the claims asserted by Marshall and the claims asserted in the counterclaim decided by arbitration. Further, “[m]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not constitute a waiver.” Voyager Life Ins. Co. v. Hughes, 841 So.2d 1216, 1219 (Ala.2001) (internal quotation marks omitted). In this case, ClimaStor simply answered the complaint, in which it raised its arbitration defense, and asserted a counterclaim against Marshall. Clima-Stor did not engage in any discovery or any other pretrial activity.[2]
Marshall relies substantially on Ocwen Loan Servicing, L.L.C. v. Washington, 939 So.2d 6 (Ala.2006). In Ocwen Loan, this Court summarized the following pretrial procedure before holding that Ocwen had waived its right to arbitration:
“Before filing its motion to compel arbitration, Ocwen, on September 27, 2004, removed the action to the United States District Court for the Southern District of Alabama and filed an answer in that court at the time of removal. The answer did not assert Ocwen’s right to arbitration. Ocwen requested that the action be transferred to a pending multi-district litigation in the United States District Court for the Northern District of Illinois. Ocwen thereafter filed in the federal court in Alabama a motion to stay the proceedings pending a decision *459 from the Judicial Panel on Multidistrict Litigation. [The plaintiff] filed an opposition to the motion for a stay. The Judicial Panel on Multidistrict Litigation then entered a conditional transfer order transferring the action to the federal court in Illinois. The transfer order provided that it would not become effective until it had been filed in that federal court and that the transmittal of the order would be stayed for 15 days from its entry, with the stay continued until further order of the panel if any party opposed the transfer. [The plaintiff] filed in the federal court in Alabama a brief opposing the transfer and a motion to remand the action to the state court. Ocwen filed in the federal court in Alabama responses to [the plaintiffs] opposition to the motion to stay, opposition to the motion to transfer, and motion to remand. The federal court in Alabama initially denied [the plaintiffs] motion to remand. [The plaintiff] then filed a motion to reconsider, which was granted, and the court entered an order remanding the action to the state court. However, on the day of the federal court’s order remanding the action to the state court, Ocwen obtained leave to file a brief in opposition to the motion to reconsider, thereby apparently suspending the operation of the remand order. Ocwen thereafter filed a response to [the plaintiffs] motion to reconsider, and [the plaintiff] filed a reply to Ocwen’s response. The federal court in Alabama ultimately remanded the action to the state court on January 19, 2005, several days after its initial order granting [the plaintiffs] motion for reconsideration and remanding the action. Ocwen filed its motion to compel arbitration over two months later on March 23, 2005.”
939 So.2d at 14-15 (emphasis added).
In finding that Ocwen had waived its right to arbitration, this Court relied significantly on Ocwen’s failure to assert its arbitration defense in its initial answer. This Court stated:
“The record is devoid of any evidentiary basis for Ocwen’s failure to assert its right to arbitrate when it filed its answer in the federal court. For purposes of this proceeding, it must therefore be assumed that Ocwen learned of its right to arbitrate soon after the commencement of this action. Had Ocwen seasonably invoked its right to arbitrate when it served its answer in the federal proceeding in Alabama in September 2004, instead of waiting until March 2005, two months after the federal court remanded the case to the state court, it would have given [the plaintiff] the option of avoiding the incurrence of the costs attendant to the various rounds of motions and briefs filed in connection with the remand of this proceeding to the state court for what [the plaintiff] had the right to conclude would be a trial in a judicial, rather than an arbitral, forum. As was true in [Ex parte ] Hood, [712 So.2d 341 (Ala.1998),] ‘[failing an answer [pleading an arbitration defense] at such a time [removal] might have indicated that [Ocwen] intended to pursue arbitration instead of a federal judicial remedy, and it would have given [the plaintiff] the opportunity to avoid spending the resources necessary to have the case remanded to the state court for a trial.’ 712 So.2d at 346.”
939 So.2d at 16-17. Additionally, Ocwen Loan is further distinguishable from this case in that Ocwen evidenced an intent to abandon its right to arbitration with its considered efforts “to pursue its defense in a judicial forum [multidistrict litigation] in the federal court in Illinois.” Ocwen Loan, 939 So.2d at 15. Here, ClimaStor simply removed the case to federal court *460 and then opposed remand based on diversity of jurisdiction.

Conclusion

Based on the foregoing reasons, we conclude that Marshall failed to establish that ClimaStor had waived its right to arbitration by substantially invoking the litigation process. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion. We pretermit discussion of whether Marshall would be prejudiced by an order requiring it to submit to arbitration.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, STUART, and MURDOCK, JJ., concur.

. Marshall does not dispute that a "contract calling for arbitration” exists and that that contract "evidences a transaction affecting interstate commerce.” See Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala.2003).

. We note that U.S. Pipe had participated in the discovery process in Curren, supra, to the extent that it participated in a discovery planning conference, agreed to a comprehensive discovery schedule, and submitted the discovery schedule to the federal district court indicating that the case would be ready for trial in June 1998.