| | | |
|---|---|---|
| **NOLALUNA, LLC** | * | **NO. 2024-CA-0555** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **E. HOWELL CROSBY,** | * | **FOURTH CIRCUIT** |
| **CHAFFE MCCALL, LLP, AND** | | |
| **ABC INSURANCE COMPANY** | * | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-04216, DIVISION "A"
Honorable Ellen M. Hazeur, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins, Judge Rachael D. Johnson)

Randall A. Smith
Dylan T. Leach
Andre M. Stolier
SMITH & FAWER, L.L.C.
201 St. Charles Avenue, Suite 3702
New Orleans, LA 70170

Emile A. Bagneris, III
Suzette P. Bagneris
THE BAGNERIS FIRM, LLC
1929 Jackson Ave
New Orleans, LA 70113

   COUNSEL FOR PLAINTIFF/APPELLANT

James R. Swanson
John Bel Edwards
Sharonda R. Williams
Rebekka C. Veith
C. Hogan Paschal
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, LA 70170

   COUNSEL FOR DEFENDANTS/APPELLEES

       **REVERSED AND REMANDED**
       **MAY 6, 2025**

*JCL*

*SCJ*

*RDJ*

This is a legal malpractice case. Plaintiff/appellant, Nolaluna, LLC ("Nolaluna"), appeals the May 17, 2024 and May 21, 2024 judgments excluding two expert witnesses from testifying at trial, and the May 17, 2024 judgment granting summary judgment and dismissing all of Nolaluna's claims against defendants/appellees, E. Howell Crosby ("Crosby") and Chaffe McCall, LLP ("Chaffe"). For the reasons that follow, we reverse.

## FACTS AND PROCEDURAL HISTORY

This litigation stems from Nolaluna's retention of Crosby and the law firm, Chaffe, to represent Nolaluna in connection with launching its circus nightclub business. According to Nolaluna, Crosby failed to obtain a conflict of interest waiver or give Nolaluna advice to obtain separate legal counsel in connection with Crosby's own financial interest in a business, Crosby Land & Resources, LLC ("Crosby Land"), which provided financing to Nolaluna. Nolaluna alleges that Crosby failed to provide adequate advice regarding the terms and consequences of said financing, which effectively precluded it from obtaining additional investment

1

and financing and, in 2016, led to the failure of Nolaluna's business before it opened, and thereafter, Crosby Land assumed the lease on the property that Nolaluna intended for its business premises. Nolaluna claims that, through these conflicts of interest, Crosby and Chaffe deprived Nolaluna of business opportunities resulting in the business failure and ensuing damages.

Nolaluna filed its petition for damages on May 2, 2017, alleging negligence, breach of contract, breach of fiduciary duty, and legal malpractice against Crosby and Chaffe. To support its claims, Nolaluna retained three expert witnesses, two of whom included Stan Feig ("Feig") and Ralph Litolff ("Litolff"). Feig was retained as an expert in the entertainment and live theater industry to provide insight into the viability of Nolaluna's business model. Feig, who had more than 50 years of experience in the entertainment business, including dinner cirques in other cities, reviewed Nolaluna's business plan and opined that the dinner cirque concept was viable. Litolff, a forensic accountant, was retained as an expert in economic and financial analysis to testify regarding the financial viability of the project and to assess the damages Nolaluna incurred.

This litigation was eventually set for trial on June 17, 2024. Meanwhile, on April 12, 2024, Crosby and Chaffe filed the three motions at issue in this appeal: (1) Motion for Summary Judgment that Nolaluna's Future Lost Profits Damages are Impermissibly Speculative; (2) Motion to Exclude the Testimony of Nolaluna's Circus Expert Stan Feig; and (3) Motion to Exclude the Testimony of Nolaluna's Damages Expert Ralph Litolff. Collectively, through these motions, Crosby and

2

Chaffe argued that neither witness was qualified to provide expert testimony supporting Nolaluna's claims for damages, and that the evidence of Nolaluna's damages was too speculative to prevail at trial.

On May 13, 2024, the district court held hearings on both motions to exclude. No witnesses testified, and the district judge granted both motions in open court. On May 17, 2024, the hearing proceeded on the motion for summary judgment, which the district court granted and signed a written judgment on the same date. Also, on May 17, 2024, the district court rendered a written judgment granting the motion to exclude Litolff's testimony. On May 21, 2024, the district court signed the judgment granting the motion to exclude Feig's testimony. This appeal followed.

## LAW AND ANALYSIS

**Assignments of Error**

On appeal, Nolaluna sets forth three assignments of error, as follows:

1. The district court's exclusion of Nolaluna's industry expert, Stan Feig, was an abuse of discretion.

2. The district court's exclusion of Nolaluna's damages expert, Ralph Litolff, was an abuse of discretion.

3. The district court erred in granting summary judgment on Nolaluna's damages.

**Standards of Review and Applicable Legal Principles**

This appeal involves the interplay between a motion to exclude expert testimony (a *Daubert*[1] motion) and a motion for summary judgment. Through its

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

motions, Crosby and Chaffe sought to exclude the testimony of two of Nolaluna's expert witnesses and obtain the dismissal of Nolaluna's claims on the basis of its inability to prove damages.[2] A motion for summary judgment and a *Daubert* motion each serves a distinct function and is subject to a particular procedure, which we discuss herein.

### *Daubert* Motion Procedure

An appellate court reviews a lower court's ruling on a motion to exclude an expert witness's testimony for an abuse of discretion. *Anderson v. City of New Orleans*, 24-0252, p. 4 (La. App. 4 Cir. 5/1/24), 390 So.3d 402, 405. However, legal error with respect to the admissibility of expert testimony is reviewed *de novo*. *Allen v. Eagle Inc.*, 22-0386, p. 9 (La. App. 4 Cir. 8/10/22), 346 So.3d 808, 814.

A *Daubert* motion uses "the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and adopted by our Louisiana Supreme Court in *State v. Foret*, 628 So.2d 1116, 1122 (La. 1993)," and enlists the district court to "perform a 'gatekeeping' function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' " *Allen*, 22-0386, p. 9, 346 So.3d at 814-15 (quoting *Versluis v. Gulf Coast Transit Co.*, 08-0729, p. 5 (La. App. 4 Cir. 7/29/09), 17

---

[2] *See generally Cox, Cox, Filo, Camel & Wilson, LLC v. Louisiana Workers' Comp. Corp.*, 21-00566, p. 11 (La. 3/25/22), 338 So.3d 1148, 1157 ("loss of business income or profits is a type of special damages that must be proved with reasonable certainty and cannot be based on speculation or conjecture").

So.3d 459, 463 and citing *Daubert*, 509 U.S. at 589, 113 S.Ct. at 2795). Using this procedure, a party may challenge a witness's qualifications to testify as an expert by knowledge, skill, experience, training, or education or the methodology used by the expert in reaching his opinion. *See generally Melerine v. Tom's Marine & Salvage, LLC*, 20-00571, p. 16 (La. 3/24/21), 315 So.3d 806, 817; La. C.C.P. art. 1425.

The relevant procedure is set forth in La. C.C.P. art. 1425(F), which, at the time of the hearings in dispute,[3] provided in relevant part:

> (1) Any party may file a motion for a pretrial hearing to determine whether a witness qualifies as an expert or whether the methodologies employed by such witness are reliable under Articles 702 through 705 of the Louisiana Code of Evidence. The motion shall be filed not later than sixty days prior to trial and shall set forth sufficient allegations showing the necessity for these determinations by the court.
>
> (2) The court shall hold a contradictory hearing and shall rule on the motion not later than thirty days prior to the

---

[3] As amended in Acts 2024, No. 371, § 1, La. C.C.P. art. 1425(F)(1) currently states:

> A party seeking to challenge whether a witness qualifies as an expert or whether the methodologies employed by the witness are reliable under Code of Evidence Articles 702 through 705 shall file a motion for a pretrial hearing. The motion shall be filed not later than sixty days prior to trial and shall set forth sufficient allegations showing the necessity for these determinations by the court.

The 2024 comment to this article explains:

> The amendment to Paragraph F of this Article makes clear that a pretrial hearing is necessary to determine whether a witness qualifies as an expert or whether the methodologies employed by the witness are reliable. This would change the result reached by the First Circuit in *Williams v. State Farm Mutual Automobile Insurance Company*, 322 So.3d 795, 797 (La. App. 1 Cir. 2021), in which the court held that the use of the permissive "may" did not mandate a pretrial motion to challenge the qualifications of an expert.

trial. At the hearing, the court shall consider the qualifications and methodologies of the proposed witness based upon the provisions of Articles 104(A) and 702 through 705 of the Louisiana Code of Evidence. For good cause shown, the court may allow live testimony at the contradictory hearing.

(3) If the ruling of the court is made at the conclusion of the hearing, the court shall recite orally its findings of fact, conclusions of law, and reasons for judgment. If the matter is taken under advisement, the court shall render its ruling and provide written findings of fact, conclusions of law, and reasons for judgment not later than five days after the hearing.

Louisiana Code of Evidence Article 702(A) provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The Supreme Court recognized that "[a]n expert may provide testimony based on information obtained from others, and the character of the evidence upon which the expert bases an opinion affects only the weight to be afforded the expert's conclusion." *Certain Underwriters at Lloyd's London v. United States Steel Corp.*, 19-1730, p. 3 (La. 1/28/20), 288 So.3d 120, 122 (citation omitted). Moreover, "the character of the evidence upon which the expert bases an opinion

6

affects only the weight to be afforded the expert's conclusion … and may serve as a basis for attack by defendants on cross-examination at trial, but it does not make his opinion evidence inadmissible under *Daubert*." *Allen*, 22-0386, p. 10, 346 So.3d at 815 (quoting *MSOF Corp. v. Exxon Corp.*, 04-0988, p. 16 (La. App. 1 Cir. 12/22/05), 934 So.2d 708, 720).

**Summary Judgment Procedure**

A court of appeal reviews a district court's ruling on a motion for summary judgment *de novo*. *Patrick v. Triay*, 22-0766, p. 4 (La. App. 4 Cir. 1/26/23), 357 So.3d 872, 875. The purpose of the summary judgment procedure is to "pierce the pleadings and to assess the evidence to determine if there are any genuine issues of material fact requiring a trial." *Id.*, 22-0766, p. 5, 357 So.3d at 875. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Larson v. XYZ Ins. Co.*, 16-0745, pp. 6-7 (La. 5/3/17), 226 So.3d 412, 416 (citing *Hines v. Garrett*, 04-0806, p. 1 (La. 6/25/04), 876 So.2d 764, 765-66). A district court cannot make credibility determinations or weigh conflicting evidence on a motion for summary judgment. *Allen*, 22-0386, p. 5, 346 So.3d at 812.

In summary, the district court examines the motion, memorandum, and properly admitted supporting documents, and – without weighing conflicting evidence or assessing credibility – determines whether the mover is entitled to judgment under the applicable substantive law. *See Patrick*, 22-0766, pp. 4-5, 357

So.3d at 875; *Allen*, 22-0386, p. 5, 346 So.3d at 812; La. C.C.P. art. 966(A)(3). The burden of proof rests with the mover, but if the mover will not bear the burden of proof at trial, the mover must only point out the absence of factual support for one or more elements essential to the adverse party's claim. La. C.C.P. art. 966(D)(1). The burden then shifts to the adverse party who has the burden to produce sufficient factual support to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Bercy v. 337 Brooklyn, LLC*, 20-0583, pp. 3-4 (La. App. 4 Cir. 3/24/21), 315 So.3d 342, 345 (citing La. C.C.P. art. 966(D)(1)).

The current version of Article 966 contains mandatory deadlines for filing and serving a motion for summary judgment, opposition, and reply, and for conducting a summary judgment hearing.[4] The record shows no dispute that the motions were filed and heard timely within the mandatory pretrial deadlines in La.

---

[4] Under La. C.C.P. art. 966:

> B. Unless extended by the court and agreed to by all of the parties, a motion for summary judgment shall be filed, opposed, or replied to in accordance with the following provisions:
> (1) Except for any document provided for under Subsubparagraph (A)(4)(b) of this Article, a motion for summary judgment and all documents in support of the motion shall be filed and served on all parties in accordance with Article 1313(A)(4) not less than sixty-five days prior to the trial.
> …
> C. (1) Unless otherwise agreed to by all of the parties and the court:
> (a) A contradictory hearing on the motion for summary judgment shall be set not less than thirty days after the filing and not less than thirty days prior to the trial date.
> (b) Notice of the hearing date shall be served on all parties in accordance with Article 1313(C) or 1314 not less than thirty days prior to the hearing.
> (2) For good cause shown, the court may order a continuance of the hearing.
> (3) The court shall render a judgment on the motion not less than twenty days prior to the trial.

C.C.P. arts. 1425(F) and 966(B)-(C). Even so, in 2023, the legislature amended La. C.C.P. art. 966 to add Subsection (D)(3), explicitly requiring that *Daubert* challenges to summary judgment evidence must be heard and disposed of before the summary judgment hearing:

> If a timely objection is made to an expert's qualifications or methodologies in support of or in opposition to a motion for summary judgment, any motion in accordance with Article 1425(F) to determine whether the expert is qualified or the expert's methodologies are reliable shall be filed, heard, and decided prior to the hearing on the motion for summary judgment.

La. C.C.P. art. 966(D)(3).

**Summary Judgment Motion Regarding Damages**

"As a general rule 'damages for loss of profits may not be based on speculation and conjecture; however, such damages need be proven only within reasonable certainty.' " *PVCA, Inc. v. Pac. W. TD Fund LP*, 20-0327, p. 14 (La. App. 4 Cir. 1/20/21), 313 So.3d 320, 331 (quoting *Breton Sound Oyster Co., LLC v. Stiel Ins. Co. of New Orleans Inc.*, 17-0955, p. 14 (La. App. 4 Cir. 12/12/18), 299 So.3d 80, 90). "Broad latitude is given in proving lost profits because this element of damages is often difficult to prove and mathematical certainty or precision is not required." *Id.* "The allowance of loss of profits as an element of damages is more liberal in actions purely in tort, as opposed to actions for breach of contract." *Breton Sound Oyster Co., LLC*, 17-0955, p. 14, 299 So.3d at 90 (quoting *Wasco, Inc. v. Econ. Dev. Unit, Inc.*, 461 So.2d 1055, 1057 (La. App. 4th

Cir. 1985)). The plaintiff bears the burden of proof that the loss of profits is "more probable than not." *Id.*

Importantly, Crosby and Chaffe filed their motion for summary judgment and motions to exclude on the same date, 66 days before trial was scheduled. The following timeline is relevant to the issues in this appeal.

| | |
|---|---|
| April 12, 2024 | motion for summary judgment and motions to exclude filed |
| May 13, 2024 | hearing on motions to exclude; rulings from the bench |
| May 17, 2024 | hearing on motion for summary judgment |
| May 17, 2024 | summary judgment signed |
| May 17, 2024 | judgment excluding Litolff's testimony signed |
| May 21, 2024 | judgment excluding Feig's testimony signed |
| June 17, 2024 | scheduled trial date |

We find that Crosby and Chaffe introduced conflicting evidence of Nolaluna's damages, which precluded summary judgment. Specifically, Crosby and Chaffe attached to their motion the expert reports and deposition testimony of both Feig and Litolff, who opined respectively that Nolaluna's business concept was viable and projected $15 million in future damages from lost profits. Crosby and Chaffe contended that these opinions of Nolaluna's damages were impermissibly speculative and failed to demonstrate that Nolaluna met its burden of proof for trial. The effect of Crosby and Chaffe introducing the reports and testimony themselves is that they did not properly object to the admissibility of the

expert testimony; they sought to have the district court review it and deem it insufficient to meet Nolaluna's burden of proof.

Under La. C.C.P. art. 966(D)(2), "[t]he court shall consider only those documents filed or referenced in support of or in opposition to the motion for summary judgment but shall not consider any document that is excluded pursuant to a timely filed objection." Article 966(D)(2)-(3) provides two means of objecting to summary judgment evidence:

(1) An "objection to a document shall be raised in a timely filed opposition or reply memorandum." La. C.C.P. art. 966(D)(2).

(2) An "objection … to an expert's qualifications or methodologies in support of or in opposition to a motion for summary judgment" is brought under La. C.C.P. art. 1425(F) and "shall be filed, heard, and decided prior to the hearing on the motion for summary judgment." La. C.C.P. art. 966(D)(3).

Crosby and Chaffe sought to implicate paragraph (D)(3): filing a separate motion objecting to the expert's qualifications or methodologies. They did not, however, object to the admissibility of the expert opinions in any opposition or reply as contemplated in paragraph (D)(2). Quite the opposite, they introduced the reports and testimony themselves via their own summary judgment motion. The district court recognized this at the hearing, and the transcript reflects that no party objected to any summary judgment evidence, and the district court considered all evidence introduced.

We find that an objection to an expert's qualifications or methodology under article 1425(F) is a distinct, separate inquiry and is not a replacement for an objection to the admissibility of summary judgment evidence under article

11

966(D)(2). As noted above, four days before the summary judgment hearing, the district court conducted a *Daubert* hearing and orally granted the motions to exclude Feig's and Litolff's testimony at trial. However, Nolaluna's experts' opinions were part of the summary judgment evidence, and the district court was required to consider them in determining whether any genuine issue of material fact existed for trial.

In the absence of an objection raised in a timely opposition or reply memorandum, the district court is "statutorily obligated to consider the expert's opinions" introduced in support of a summary judgment motion. *Sketchler v. Hernandez*, 20-0292, p. 8 (La. App. 1 Cir. 5/19/21), 326 So.3d 912, 918 (citing La. C.C.P. art. 966(D)(2) and *Mariakis v. N. Oaks Health Sys.*, 18-0165, p. 11 (La. App. 1 Cir. 9/21/18), 258 So.3d 88, 96). "At that point, in determining whether the evidence creates a genuine issue of material fact, the trial court cannot make credibility determinations, evaluate testimony, or otherwise weigh the evidence." *Sketchler*, 20-0292, p. 8, 326 So.3d at 918.

Under La. C.C.P. art. 966(D)(2), the lower court properly considered the documents filed in support of and in opposition to the motion for summary judgment to which no objection was made. However, the district court erred in overlooking that the expert testimony submitted by Crosby and Chaffe demonstrated that genuine material issues regarding damages remained. Feig provided opinion testimony that Nolaluna's business concept was viable and would be profitable, and Litolff provided opinion testimony providing projected damages

12

calculations. The district court was not permitted to weigh the evidence or assess the experts' credibility. In doing so, district court erroneously conflated the standard for summary judgment with the standard for excluding an expert witness from testifying at trial. With the opinion testimony under the district court's consideration, the summary judgment evidence demonstrated that genuine issues of material fact remained as to Nolaluna's damages. Summary judgment was improper and must be reversed.

We further acknowledge our jurisprudence finding that "an unresolved *Daubert* issue may render consideration of a summary judgment motion premature." *Patrick*, 22-0766, p. 7, 357 So.3d at 877 n. 5 (citing *Dehart v. Jones*, 19-789, p. 17 (La. App. 3 Cir. 12/16/20), 310 So.3d 658, 671 and *Guardia v. Lakeview Reg'l Med. Ctr.*, 08-1369, p. 8 (La. App. 1 Cir. 5/8/09), 13 So.3d 625, 631). In hearing and deciding the *Daubert* motions essentially contemporaneously with the motion for summary judgment – only one month before trial and after all discovery deadlines had elapsed – Nolaluna was left with no recourse to obtain any other expert or seek a continuance of trial to do so. *Compare Hooper v. Travelers Ins. Co.*, 10-1685, pp. 8-9 (La. App. 4 Cir. 9/28/11), 74 So.3d 1202, 1207. Under the procedural circumstances facing this Court, we are disinclined to "permit technical pleading rules to triumph over actual justice[.]" *Patrick*, 22-0766, p. 9, 357 So.3d at 877 (quoting *Lamb v. Lamb*, 430 So.2d 51, 54 (La. 1983)).

The Louisiana legislature was mindful of these concerns in enacting La. C.C.P. art. 966(D)(3), explicitly requiring that *Daubert* challenges to summary

judgment evidence must be heard and disposed of **before the summary judgment hearing**. In the comments to this 2023 amendment, the legislature instructed courts: "[t]o avoid any possible conflict between the time delays in this Article and Article 1425(F), the court should set appropriate deadlines for the Article 1425(F) hearing in a scheduling or pretrial order." La. C.C.P. art. 966, cmt (g) (2023). We, therefore, reverse the district court's grant of summary judgment and remand this matter for further proceedings consistent with this opinion.

**Motions to Exclude the Testimony of Stan Feig and Ralph Litolff**

On May 13, 2024, the district court held a hearing on the motions to exclude the testimony of Feig and Litolff, retained by Nolaluna as experts. The district court rendered rulings in court, later reflected in written judgments, and provided oral findings and reasons as contemplated in La. C.C.P. art. 1425(F)(3).

The district court found that Feig possessed the qualifications and experience to be deemed an expert in the entertainment industry capable of opining on Nolaluna's projections of future profitability, with the caveat that he was not qualified to testify about tax credit financing or the viability of a bar ancillary to the dinner circus. That said, the district court took issue with the methodology Feig used. The district court determined that Feig's opinions were not based on sufficient facts or were not the product of reliable principles and methods, reasoning that Feig did not undertake an independent analysis of projected customer demand for a dinner circus or physically inspect the property to assess the cost of the construction needed on the leased property. Nolaluna points out that

14

Feig's expertise is necessarily experience-based. *See Kanda Const., LLC v. Gebre*, 15-1307, p. 9 (La. App. 4 Cir. 7/20/16), 197 So.3d 791, 796 ("[a] combination of specialized training, work experience and practical application of the expert's knowledge can combine to demonstrate that a person is an expert"). Feig reviewed publicly available ticket sales data from other markets on the West Coast, Chicago,[5] and Vancouver, along with other New Orleans venues, and used it to validate Nolaluna's revenue projections concerning ticket prices and operating expenses. The district court evidently rejected Nolaluna's characterization of Feig's review as an analysis of strategic advantages of Nolaluna's intended business location, New Orleans' established entertainment infrastructure, neighborhood demographics, audience characteristics, and cultural alignment with Nolaluna's business concept. Instead, the lower court looked to this Court's holding in *Manuel v. Fat Catz Music Club, Inc.*, 22-0288 (La. App. 4 Cir. 8/3/22), 366 So.3d 264, to conclude that Feig's reliance on financial projections that Nolaluna principal, Stanley Morris, prepared were improper.

As to Litolff, the district court's oral ruling did not specifically address the proposed expert's qualification by knowledge, skill, experience, training or education, but it was undisputed that Litolff is a certified public accountant. The district court addressed only Litolff's methodology, determining again that his opinions were not based on sufficient data and information. Relying again on

_____

[5] The parties argue at length about the relevance and unprofitability of Feig's cirque venture in Chicago, particularly in the wake of the COVID-19 pandemic. However, as the district court judge did not address this in her oral findings, such arguments are not properly before us.

*Manuel*, the district court determined that Litolff improperly relied on Morris's projections and Feig's opinions. The district court noted that Litolff's analysis encompassed verification of these projections using aggregated data from other businesses in the entertainment field, compiled by the Risk Management Association, a national organization that compiles such data for risk professionals at financial institutions. The district court concluded that Litolff's analysis method was insufficient because the aggregated data did not permit Litolff to verify individual line items in Nolaluna's pre-litigation financial projections.[6]

We find the district court's application of *Manuel* tremendously broad, as the facts of *Manuel* are particularly egregious. Of particular concern in *Manuel*, past financial statements of the plaintiff's business existed, which the purported expert ignored and failed to address in his opinion testimony; rather, he relied entirely on plaintiff's own projections of future earnings (as compiled by an unidentified accountant) without conducting any independent analysis of the projections. Importantly, no summary judgment was at issue, only a decision as to whether an economic expert whose inputs are merely plaintiff's own estimations of his own financial projections can testify as to his opinions as an expert. While *Manuel* stands for the proposition that a plaintiff cannot simply submit his own estimates of his damages cloaked as expert opinion, we cannot say based on the

---

[6] *But see In re AES Thames, L.L.C.*, No. 11-10334 (KJC), 2016 WL 11595116, at *8 (Bankr. D. Del. Oct. 28, 2016)("[o]ther courts have determined that opinions based on data from the Risk Management Association [were] reliable")(collecting cases).

evidence presented that *Manuel* is similar to this case, and the district court erred in relying on it to exclude Feig and Litolff from testifying.

Moreover, numerous courts have frowned upon excluding an expert at the summary judgment stage, which would "improperly usurp the function of the factfinder at trial, which is to weigh the evidence and expert opinions in order to determine whether the plaintiffs have met their burden" of proving the elements of their claims. *Carpenter v. Thomas*, 22-0872, p. 13 (La. App. 1 Cir. 3/13/23), 362 So.3d 977, 985 (citing *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, p. 17 (La. 2/29/00), 755 So.2d 226, 236); *Aldridge v. Greenbrier Hosp., L.L.C.*, 23-0526, p. 16 (La. App. 1 Cir. 3/13/24), 385 So.3d 712, 725, *writ denied*, 24-00480 (La. 9/17/24), 392 So.3d 633, *and writ denied*, 24-00484 (La. 9/17/24), 392 So.3d 634, *and writ denied*, 24-00492 (La. 9/17/24), 392 So.3d 635; *McKay v. Hosp. Serv. Dist. No. 1 of Tangipahoa Parish*, 23-1244, p. 11 (La. App. 1 Cir. 10/11/24), --- So.3d ----, ----, 2024 WL 4471779, at *5; *Crawford v. Ordoyne*, 24-0716, p. 12 (La. App. 1 Cir. 3/20/25), --- So.3d ----, ----, 2025 WL 865680, at *6. Such a result is particularly concerning where plaintiffs claim that defendants intentionally caused their business failure before plaintiffs were ever able to generate any financial records, rendering any proof of lost profits virtually impossible without expert opinion. Considering the unique misconduct alleged, the courts must not foreclose such plaintiffs from introducing evidence of projected damages by excluding their expert testimony wholesale so close to trial. We recognize, as in other cases, that "[v]igorous cross-examination, presentation of contrary evidence,

17

and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Carpenter*, 22-0872, p. 12, 362 So.3d at 985 (citing *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798 and *Blair v. Coney*, 19-00795, p. 9 (La. 4/3/20), 340 So.3d 775, 781).

In conclusion, Feig and Litolff's methodologies met the *Daubert* standard: Feig used public data, market comparisons, and decades of industry experience to assess Nolaluna's business viability, while Litolff relied on recognized benchmarking tools and third-party financial data to support his damages analysis. Their reliance on projections was appropriate given the absence of historical financials for a business that never launched. The district court's exclusion of these experts based on concerns that go to weight rather than admissibility misapplied *Daubert* and improperly relied on the distinguishable *Manuel* case. We, therefore, find the district court abused its discretion in excluding these witnesses' testimony at this stage.

## CONCLUSION

Therefore, for the reasons set forth in this opinion, we reverse the May 17, 2024 and May 21, 2024 judgments of the district court excluding the testimony of Feig and Litolff, and the May 17, 2024 judgment granting summary judgment. We remand this case to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**